CARLSON, Respondent, vs. MARINETTE COUNTY, Appellant.

*June 3—July 3, 1953.*

For the appellant there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *E. L. Everson.*

For the respondent there was a brief by *Robert D. Murphy* of Marinette, and *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Mr. Murphy* and *Mr. Fred Kaftan.*

FRITZ, C. J.    Plaintiff alleged in her complaint that Marinette county owned and operated a general hospital, which

was managed by a committee of members of the Marinette county board; that on September 30, 1948, plaintiff and defendant entered into a contract by which defendant agreed for valuable consideration to furnish to plaintiff and the surgeon employed by her, hospital facilities necessary to enable plaintiff's surgeon to perform an operation upon her; and that defendant agreed to provide a room and the usual and proper care for plaintiff immediately after the completion of the operation until such time as her surgeon advised her to leave the hospital; that such services would be performed by defendant's employees in a skilful manner according to the standard established therefor by similar institutions and by persons so trained, for the purpose of rendering such care and treatment; and in consideration of defendant's promises, plaintiff promised to pay to defendant whatever sum represented the reasonable value of said care and treatment, and the room, board, and use of defendant's hospital facilities. That pursuant to said contract, plaintiff, on October 1, 1948, was operated on for hemorrhoids in said hospital; and for the purposes of the operation, an anesthesia was administered as was understood by both parties; that immediately after the operation had been performed, plaintiff was placed in one of the defendant's hospital rooms; and while she was in a helpless condition, defendant failed to care for the plaintiff as agreed, to furnish adequately trained, prudent, and competent personnel to care for plaintiff, in that one of defendant's employees placed a scalding hot-water bottle under the plaintiff, thereby severely burning and injuring plaintiff; that by reason of the defendant's failure to adequately and properly care for the plaintiff and to furnish competent personnel, defendant violated its agreement to provide such care; and that by reason of defendant's failure to perform said contract, the plaintiff was severely injured, and will be permanently disabled; and as a result thereof, she sustained damages in the sum of $10,000.

As a second cause of action plaintiff alleges that said hospital is operated by the defendant county for profit; that it receives a reasonable sum and makes charges for the care and treatment of all patients; that in the operation of the hospital, defendant is engaged in a competitive enterprise, the purpose of which is gain and profit, and by reason thereof, defendant is liable for the negligent acts of its employees; and that the injuries to plaintiff were caused by the negligence of defendant in that an employee of defendant placed a scalding hot-water bottle under plaintiff while she was in a helpless condition following said operation.

Defendant's answer alleges that in the maintenance and operation of the hospital, defendant is engaged in a governmental function and also engaged in a charitable enterprise; that no profit from the operation thereof inures or can inure to the benefit of any private person or individual; and therefore defendant is not liable to respond in damages to plaintiff for any injuries which plaintiff may have sustained by reason of the negligence of a servant or employee of the defendant.

The jury found that defendant failed to exercise ordinary care in regard to inspecting the hot-water-bottle application after placing the bottle in plaintiff's bed; and that such failure was the proximate and efficient cause of the injuries complained of. The jury assessed plaintiff's damages at $234.14 for hospital and medical expenses; $1,000 for past pain and suffering; and $200 for scars. Upon motions after verdict, defendant renewed its motions for a directed verdict made at the conclusion of the evidence and moved in the alternative, if such motions were denied, for judgment notwithstanding the verdict.

Judge DUQUAINE, in his decision on the motions after verdict, stated:

"The jury found that the hospital was not negligent with respect to covering the hot-water bottle but was negligent with respect to inspecting the hot-water-bottle application

after the bottle was placed in plaintiff's bed. The evidence amply supports the verdict. Defendant does not question the finding of negligence or the amount of damages. Its sole contention, made in renewal of its motion for a directed verdict, is that no liability exists for the negligent act of the hospital's employees because (1) the operation of the hospital in its relation to plaintiff constituted the performance of a governmental function, and (2) the hospital was so operated as to be classifiable as a charitable institution. Immunity from liability for the negligence here found is claimed to exist upon each of these grounds.

"As respects charitable institutions privately owned, and especially hospitals, the supreme court has adhered to a doctrine of full immunity, refusing to make exceptions to the rule of nonliability for reasons which some other courts have found sufficient to justify an exception, namely: When the negligence consists of careless selection of the employee causing the injury rather than the employee's negligent act. (*Shumacher v. Evangelical Deaconess Society,* 218 Wis. 169); when the suit is by a stranger rather than one receiving service or benefit from the institution. (*Bachman v. Young Women's Christian Asso.* 179 Wis. 178); when the injured patient is a pay patient rather than a recipient of charity."

In *Morrison v. Henke,* 165 Wis. 166, 168, 170, 160 N. W. 173, the court stated:

"The authorities in this country almost uniformly hold that in the absence of any negligence in their selection charitable hospitals are not liable to their patients for the torts of their employees. . . .

"While our courts disclose great unanimity in declaring charitable hospitals immune against claims of their patients based upon the negligence of their servants, they are by no means agreed as to grounds of immunity. Some place it upon the ground of public policy; others upon the ground that since the funds of the institutions are impressed with a trust for charitable purposes, they cannot be diverted to other uses; and still others upon the ground of an implied waiver on the part of voluntary recipients of the charity of any claim for damages. Without discussing the relative merits of these different grounds, we prefer to rest our decision upon the

principle that since these charitable hospitals perform a quasi-public function in ministering to the poor and sick without any pecuniary profit to themselves, the doctrine of *respondeat superior* should not be applied to them in favor of those receiving their charitable services. . . . Since the hospital derives no profit from its work and since it is founded for the sole purpose of conserving the health and life of all who may need its aid, and since it ministers to those who cannot pay as well as those who can, thus acting as a good Samaritan, justice and sound public policy alike dictate that it should be exempt from the liability attaching to masters whose only aim is to engage in enterprises of profit or self-interest. The patient who accepts the services of such an institution, if injured therein by the negligence of an employee, must be content to look for redress to such employee alone. . . .

"All the cases holding charitable hospitals immune that have spoken upon the subject agree that the exemption from liability applies to pay as well as to free patients."

The foregoing decisions of this court imply that, when a municipality operates a hospital on the same basis as a charitable institution, it functions in its governmental capacity and is immune from liability. However, in the only Wisconsin case which deals directly with the question whether a municipality, in operating a general hospital, functions in a proprietary rather than a governmental capacity, that has come to our attention, the court reached the conclusion that it operates in the former capacity. *Meier v. Madison,* 257 Wis. 174, 42 N. W. (2d) 914. That case involved the validity of an issue of bonds by the city of Madison to finance the construction of an addition to a municipally owned hospital. The court held that the city in operating a hospital, like a waterworks system, acts in a proprietary and not in a governmental capacity. That holding does not necessarily mean that in all their relationships in the operations of the hospitals, municipalities function in a proprietary capacity. It may well be that in the free treatment of its own indigents and also

in other instances it functions in its governmental capacity, but in the treatment of full-pay patients, receiving relief from a condition which creates no public danger or problem, it acts in its proprietary capacity. In waterworks cases, the general operation of the system is considered proprietary, but the acts incident to extinguishing fires are governmental. *Piper v. Madison,* 140 Wis. 311, 122 N. W. 730.

In the case at bar, the plaintiff was received in the hospital as a private patient. The rate charged her was the standard sum fixed at such amount as, with the anticipated patient load, would return revenues in excess of operating expenses as calculated by the county. As stated in *Britten v. Eau Claire,* 260 Wis. 382, 386, 51 N. W. (2d) 30:

"The doctrine that immunity from liability should be granted to the state and municipalities while engaged in governmental operations rests upon a weak foundation. Its origin seems to be found in the ancient and fallacious notion that the king can do no wrong. The rule is one of such long standing and has become so firmly established as a parcel of Wisconsin's jurisprudence, however, that we should hesitate to abandon it. We consider that if it is to be abandoned it is only proper that the request therefor should be made to the legislature. But we do consider that the precedent, lacking support in both logic and reason, should not be so construed so as to extend the exemption beyond the boundaries of its previous application. And, since we are not foreclosed by any former decision of this court to consider the direct question before us as a novel one and since none of the precedents disclose a state of facts similar to those which we have for consideration, we conclude that when the city of Eau Claire parked its equipment after completing the day's work it was functioning in its proprietary capacity and therefore subject to the same rules as to liability for the maintenance of an attractive nuisance as is a nonpublic agency."

*By the Court.*—Judgment affirmed.