Kojis, by Guardian, Respondent, v. Doctors Hospital, Appellant.

*December 2, 1960—January 10, 1961.*

368

For the appellant there were briefs by *John A. Kluwin* and *Bernard J. Hankin,* attorneys, and *Whyte, Hirschboeck, Minahan, Harding & Harland* of counsel, and oral argument by *Mr. Reginald W. Nelson* and *Mr. Hankin,* all of Milwaukee.

For the respondent there was a brief by *Paulsen, Wake & Prosser,* attorneys, and *John F. Zimmermann* of counsel, all of Milwaukee, and oral argument by *Mr. Zimmermann.*

BROADFOOT, J.   In our consideration of the action we are assuming that the defendant is a charitable hospital and operates as such. We are concerning ourselves only with the question of whether or not a charitable hospital should be exempt from liability for its own negligence or that of its agents, servants, or employees to a paying patient.

Such immunity was first recognized in Wisconsin in the case of *Morrison v. Henke* (1917), 165 Wis. 166, 160 N. W. 173. A defendant in that case was the La Crosse Hospital Association. The record disclosed that the hospital was an eleemosynary institution paying no dividends, largely supported by charitable donations, and that the weekly charge made to the plaintiff was not enough to cover the cost of services rendered to him. The court reviewed many cases in other jurisdictions, the first one being *McDonald v. Massachusetts General Hospital* (1876), 120 Mass. 432, which was followed in several states. In arriving at the decision in that case we said (p. 170) :

"While our courts disclose great unanimity in declaring charitable hospitals immune against claims of their patients

based upon the negligence of their servants, they are by no means agreed as to the grounds of immunity. Some place it upon the ground of public policy; others upon the ground that since the funds of the institutions are impressed with a trust for charitable purposes they cannot be diverted to other uses; and still others upon the ground of an implied waiver on the part of voluntary recipients of the charity of any claim for damages. Without discussing the relative merits of these different grounds, we prefer to rest our decision upon the principle that since these charitable hospitals perform a quasi-public function in ministering to the poor and sick without any pecuniary profit to themselves, the doctrine of *respondeat superior* should not be applied to them in favor of those receiving their charitable services."

In other words, the immunity was granted on the ground of public policy. That doctrine of immunity from tort liability was applied in several succeeding cases involving charitable and religious institutions. Other charitable hospital cases included *Schumacher v. Evangelical Deaconess Society* (1935), 218 Wis. 169, 260 N. W. 476, and *Schau v. Morgan* (1942), 241 Wis. 334, 6 N. W. (2d) 212. *Carlson v. Marinette County* (1953), 264 Wis. 423, 59 N. W. (2d) 486, involved an action by a paying patient in a hospital operated by Marinette county. The county pleaded immunity on the ground that it was engaged both in a governmental function and in a charitable enterprise. We held that the county was operating its hospital in a proprietary rather than a governmental capacity and since the rate charged the plaintiff was the standard sum fixed at such amount as, with the anticipated patient load, would return revenue in excess of operating expenses as calculated by the county, it was not entitled to the charitable immunity.

It is possible, if not probable, that the present case could be disposed of in the same manner. However, we prefer to deal with the issue herein presented upon a broader basis by reviewing and restating our position with respect to wheth-

er or not immunity should be granted to a charitable hospital for negligence to a paying patient.

We have already limited the application of the doctrine in certain cases. In *Wilson v. Evangelical Lutheran Church* (1930), 202 Wis. 111, 230 N. W. 708, we held that the immunity did not apply to a religious organization in case of breach of a statute (safe-place statute). This has been followed in *Zimmers v. St. Sebastian's Congregation* (1951), 258 Wis. 496, 46 N. W. (2d) 820, and in *Grabinski v. St. Francis Hospital* (1954), 266 Wis. 339, 63 N. W. (2d) 693. In *Smith v. Congregation of St. Rose* (1953), 265 Wis. 393, 61 N. W. (2d) 896, we held that charitable and religious corporations will not be held immune from liability for nuisances created or permitted by them.

In 2 Harper and James, Law of Torts, p. 1667, sec. 29.16, and in Prosser, Law of Torts (2d ed.), p. 784, sec. 109, it is stated that the trend in this country is away from the doctrine of charitable immunity. The opinion of Mr. Justice RUTLEDGE in *President and Directors of Georgetown College v. Hughes* (1942), 130 Fed. (2d) 810, has been very influential in giving the trend momentum. Professor Prosser referred to the opinion as being "devastating."

The latest state to reverse its prior stand as to the immunity of a charitable hospital is the state of Michigan. In *Parker v. Port Huron Hospital* (Mich. 1960), 105 N. W. (2d) 1, the supreme court of Michigan quotes at length from the opinion by Mr. Justice RUTLEDGE. In its opinion the Michigan court states that since the date of that opinion 17 jurisdictions have abolished whatever immunity rule they previously had. Michigan was the 18th such jurisdiction.

For the historical background of the doctrine we refer to the above citations to Harper and James, Prosser, the RUTLEDGE opinion, the Michigan decision, and a lengthy annota-

tion in 25 A. L. R. (2d) 29. This annotation is very complete up to 1952 and contains a citation of cases state by state. Included in the above are full discussions of the reasons for and against the doctrine of charitable immunity. We were particularly impressed by the logic in the opinion of Mr. Justice RUTLEDGE and the manner in which he answered the arguments for the rule in the light of present-day conditions.

The defendant insists that if the rule be changed it should be done by the legislature and not by the court. This is upon the theory that questions of public policy are to be determined by the legislature. If that were strictly true then perhaps this court was in error in adopting the doctrine of charitable immunity in the first place. We do not think that is true. We believe the court was justified in acting as it did in 1917 in view of conditions as they then existed. The rule of *stare decisis,* however desirable from the standpoint of certainty and stability, does not require us to perpetuate a doctrine that should no longer be applicable in view of the changes in present-day charitable hospitals. They are now larger in size, better endowed, and on a more-sound economic basis. Insurance covering their liability is available and prudent management would dictate that such protection be purchased.

The financial statement of the defendant clearly shows that the judgment for damages in the present action would not cause it to suspend its operations or to be seriously hampered therein. Under the circumstances revealed by the record we have no hesitancy in stating that we will no longer recognize the defense of charitable immunity in cases where a paying patient is seeking recovery from a charitable hospital for the negligent acts of the hospital, its agents, servants, or employees, and we hereby overrule all of our prior decisions that are inconsistent with this opinion.

The issues raised by the pleadings will of necessity have to be tried. For that reason we agree with the trial court

that there must be a trial, although for a somewhat-different reason.

*By the Court.*—Order affirmed.

Supplemental opinion.

BROADFOOT, J.   Since the filing of our original opinion herein, it has been called to our attention that the Michigan court in *Parker v. Port Huron Hospital* (Mich. 1960), 105 N. W. (2d) 1, in abolishing the rule of charitable immunity formerly accorded to Michigan charitable hospitals, made such ruling prospective from the date of the filing of the decision except that it was immediately made applicable to the case therein decided.

We quote from the opinion in *Parker v. Port Huron Hospital, supra,* as follows (105 N. W. (2d) pp. 14, 15):

"In the interests of justice and fairness, in view of the new ruling and the reliance that some, albeit few, charitable, nonprofit hospital corporations may have placed on the old ruling, and may have failed to protect themselves by the purchase of available insurance, we believe the new rule should apply to the instant case and to all future causes of action arising after September 15, 1960, the date of the filing of this opinion.

"It is our opinion that a charitable, nonprofit hospital organization should no longer be held immune from liability for injuries to patients caused by the negligence of its employees.  Our previous decisions holding to the contrary are hereby overruled, subject to the above limitation as to this case and future cases."

The same considerations of public policy which motivated the Michigan court in making their ruling prospective, which abolished the rule of charitable immunity of hospitals, moves us to do likewise.

For a comprehensive treatise on the subject of the prospective overruling by appellate courts of past precedents see

Levy, Realist Jurisprudence and Prospective Overruling, 109 University of Pennsylvania Law Review (1960), 1. Among legal scholars who have advocated such practice are Wigmore [1] and Cardozo. [2]

The Illinois court in the recent case of *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. (2d) 11, 163 N. E. (2d) 89, in prospectively abolishing the immunity of municipalities in tort, made such change in the rule applicable to the case therein decided, and cited a number of decisions from other jurisdictions in which this had been done. [3] The reasons so advanced for so doing were stated as follows (163 N. E. (2d) p. 97):

"At least two compelling reasons exist for applying the new rule to the instant case while otherwise limiting its application to cases arising in the future. First, if we were to merely announce the new rule without applying it here, such announcement would amount to mere dictum. Second, and more important, to refuse to apply the new rule here would deprive appellant of any benefit from his effort and expense in challenging the old rule which we now declare erroneous. Thus there would be no incentive to appeal the upholding of precedent since appellant could not in any event benefit from a reversal invalidating it."

For similar reasons, the change in rule announced in our original opinion is made applicable to the defendant.

[1] Wigmore, Editorial Preface to Science of Legal Method at xxxvii–xxxviii (Modern Legal Philosophy Series vol. IX, 1917).

[2] Address by Chief Judge CARDOZO, New York State Bar Association, January 22, 1932, in 55 Report of N.Y.S.B.A., 263, 294–296 (1932).

[3] *Dooling v. Overholser,* 100 U.S. App. D. C. 247, 243 Fed. (2d) 825; *Shioutakon v. District of Columbia,* 98 U. S. App. D. C. 371, 236 Fed. (2d) 666, 60 A. L. R. (2d) 686; *Durham v. United States,* 94 U. S. App. D. C. 228, 214 Fed. (2d) 862, 45 A. L. R. (2d) 1430; *Barker v. St. Louis County,* 340 Mo. 986, 104 S. W. (2d) 371; *Farrior v. New England Mortgage Security Co.* 92 Ala. 176, 9 So. 532, 12 L. R. A. 856; *Haskett v. Maxey,* 134 Ind. 182, 33 N. E. 358, 19 L. R. A. 379; *Dauchey Co. v. Farney,* 105 Misc. 470, 173 N. Y. Supp. 530.