DUNCAN, Plaintiff and Respondent, v. STEEPER and others, d/b/a JACKSON CLINIC, and another, Defendants and Respondents: METHODIST HOSPITAL, Defendant and Appellant.

*June 5—June 29, 1962.*

228

For the appellant there were briefs by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner.*

For the respondent Duncan there was a brief and oral argument by *William R. Curkeet, Jr.,* of Madison, and *Jack L. Goodsitt* of Milwaukee.

For the respondents John R. Steeper and others, d/b/a Jackson Clinic, and Roger Harned, there was a brief and oral argument by *W. L. Jackman* and *William L. McCusker,* both of Madison.

A brief *amici curiae* was filed by *Robert S. McCormack* of Milwaukee, for the Wisconsin Hospital Association and the Wisconsin Conference of Catholic Hospitals.

CURRIE, J. In *Kojis v. Doctors Hospital* (1961), 12 Wis. (2d) 367, 107 N. W. (2d) 131, 107 N. W. (2d) 292, this court abolished prospectively, effective January 10, 1961, the defense of charitable immunity in cases where a paying patient is seeking recovery from a charitable hospital for the negligent acts of the hospital, its agents, or employees. Prior to this decision, the defense of charitable immunity would have been a bar to recovery in such cases. *Morrison v. Henke* (1917), 165 Wis. 166, 160 N. W. 173. The instant plaintiff was a paying patient of defendant Methodist Hospital at the time he sustained his alleged injury in 1958. Therefore, the defense of charitable immunity would be a

complete bar to his cause of action against this defendant if it is a charitable hospital. Thus, the sole issue before us is whether Methodist Hospital is a charitable institution.

Methodist Hospital was incorporated under the laws of Wisconsin in 1926 as a nonstock corporation. Its articles of incorporation expressly prohibited the distribution of any dividends or pecuniary profits to its twenty-one members. Its stated corporate purposes were "to establish, equip, operate and maintain benevolent and charitable institutions for giving medical and surgical care to sick, wounded, and suffering; [and] to establish and conduct a training school for nurses in accordance with the laws of the state of Wisconsin, and the discipline of the Methodist Episcopal Church." Subsequent amendment increased the number of members from 21 to 30, and eliminated the requirement that the training school for nurses be under the discipline of the Methodist Episcopal Church. The corporation presently operates but one institution, a hospital in the city of Madison which includes a training school for nurses.

Because the present articles of incorporation contain no provision for distribution of assets upon dissolution, such distribution is governed by sec. 181.51 (3), Stats., which provides:

"Assets received and held by the corporation subject to limitations permitting their use only for charitable, religious, eleemosynary, benevolent, educational, or similar purposes, but not held upon a condition requiring return, transfer or conveyance by reason of the dissolution, shall be transferred or conveyed to one or more domestic or foreign corporations, societies or organizations engaged in activities substantially similar to those of the dissolving corporation, pursuant to a plan of distribution adopted as provided in this chapter."

Another statute, sec. 181.35, makes it impossible for Methodist Hospital to amend its articles so as to cease operating its present hospital and nurses' training school

as a charitable and benevolent institution, or so as to permit any distribution of dividends or profits to the members. This statute provides:

"A [nonstock] corporation may amend its articles of incorporation in any and as many respects as may be desired, provided that the amendment does not change substantially the original purposes of the corporation and that its articles of incorporation as amended contain only such provisions as might be lawfuly contained in original articles of incorporation if made at the time of making such amendment."

The articles of incorporation of a hospital corporation are *prima facie* evidence of its character as a charitable institution. *Southern Methodist Hospital & Sanitorium v. Wilson* (1935), 45 Ariz. 507, 525, 46 Pac. (2d) 118; *Barrett v. Brooks Hospital* (1959), 338 Mass. 754, 758, 157 N. E. (2d) 638; Anno. 119 A. L. R. 1012, 1022. Thus, the articles of incorporation of defendant Methodist Hospital, both as originally stated and as presently amended, *prima facie* establish it to be charitable in nature. But because the effect of the articles is merely to establish *prima facie* the defense of charitable immunity, it is subject to being rebutted by evidence that the actual operation of the hospital indicates that it is in reality not charitable in nature. *Rivera v. Misericordia Hospital* (1962), 15 Wis. (2d) 351, 353, 112 N. W. (2d) 918.

Respondents contend that the facts with respect to defendant hospital's operations brought out by the affidavits filed in opposition to the motion for summary judgment prove that it is not a charitable organization. The facts stressed by respondents are these: All patients are charged on the hospital's books for the services which they receive, and are billed for the same. The rates for these charges are fixed by the hospital's board of directors, and are set so that, considering the anticipated patient load, they will produce a total revenue in excess of operating expenses. When pa-

tients do not pay their bills the practice has been to place these bills in the hands of collection agencies. There is no charity ward maintained in the hospital and no patients are initially accepted as charity patients. In recent years defendant hospital has found it unnecessary to put on any public drive for contributions in order to carry on its functions, and donations during this period have been minimal. During each year of the period from 1950 through 1960, defendant hospital has realized a net profit in its operations varying from a low of $13,773.40 for 1958, to a high of $59,311.31 for 1951. These results include the annual deficit from the operation of the nurses' training school.

On the other hand, the affidavits filed in behalf of defendant hospital disclose: The hospital accepts all patients who come to it regardless of race, religion, or financial ability to pay for services. While the hospital does not initially give charity status to any patient when admitted, it does charge off the bills of those patients it ultimately determines are unable to pay. In the fiscal year ending June 30, 1960, it charged off the sum of $23,319.68 on the accounts of 367 patients and granted a discount to welfare patients of $2,855.15. No salaries are paid to the hospital's board of directors and the salaries of staff employees are in keeping with those generally paid by other hospitals. All net profits are applied toward debt retirement and additions and modernization of plant and equipment. At the present time, a nurses' dormitory is under construction at a cost of $670,000 of which $270,000 is being financed by a Hill-Burton grant from the federal government, $48,682.20 by payments out of current and accumulated funds, and the remaining $351,317.80 by indebtedness which defendant hospital will have to pay in future years. In order to qualify for the Hill-Burton grant it was necessary for defendant hospital to establish its charitable status. Furthermore, defendant hos-

pital has been granted exemption from federal and state income taxation as a charitable institution.

The three principal reasons advanced by respondents to rebut the *prima facie* establishment of defendant Methodist Hospital's charitable status are: (1) All admittees to this hospital are in reality paying patients and, thus, no charity is extended; (2) it has operated at a profit for the past eleven years; (3) it is not dependent on donations to finance its operations.

The annotation in 25 A. L. R. (2d) 29, 107, entitled "Immunity of nongovernmental charity from liability for damages in tort," states that it is generally held that the charitable character of an institution is not destroyed merely on account of a charge being made for services. Cases so holding are: *Southern Methodist Hospital & Sanitorium v. Wilson* (Ariz.), *supra; Boardman v. Burlingame* (1938), 123 Conn. 646, 197 Atl. 761; *Forrest v. Red Cross Hospital* (Ky. 1954), 265 S. W. (2d) 80; *Barrett v. Brooks Hospital* (Mass.), *supra; Muller v. Nebraska Methodist Hospital* (1955), 160 Neb. 279, 70 N. W. (2d) 86; *Williams v. Hospital Asso.* (1951), 234 N. C. 536, 67 S. E. (2d) 662; *Miller v. Mohr* (1939), 198 Wash. 619, 89 Pac. (2d) 807; *Fortugno v. Trachtenberg* (D. C. Pa. 1962), 202 Fed. Supp. 177. 4 Scott, Trusts (2d ed.), p. 2910, sec. 402.1, states: "The mere fact that fees are to be paid by the recipients of benefits does not prevent it from being charitable if the income is to be used to maintain the institution or is to be applied to some other charitable purpose." See also 10 Am. Jur., Charities, p. 700, sec. 151; *Nuns of St. Dominic v. Younkin* (1925), 118 Kan. 554, 235 Pac. 869.

It is apparent that respondents harbor the mistaken view that an institution cannot be a charitable hospital unless it extends direct charity to at least some of its patients in the form of free service, or charges less than the cost of its

services. This view was eloquently refuted by the Massachusetts court in the recent case of *Barrett v. Brooks Hospital, supra,* at page 759:

"The defendant's charter does not contain any such word as 'indigent.' That is not necessary. 'Charity in the legal sense "is not confined to mere almsgiving or the relief of poverty and distress, but has a wider signification, which embraces the improvement and promotion of the happiness of man." . . . *New England Sanitarium v. Stoneham,* 205 Mass. 335, 342.' *Little v. Newburyport,* 210 Mass. 414, 417."

In *Associated Hospital Service v. Milwaukee* (1961), 13 Wis. (2d) 447, 460, 109 N. W. (2d) 271, this court pointed out that some courts have adopted broad definitions of "charitable" institutions which do not embody the idea of giving away something free. As an example we therein cited *Rueda v. Union Pacific R. Co.* (1946), 180 Or. 133, 169, 175 Pac. (2d) 778, 793, to the effect that the test of whether an enterprise, such as a hospital, is charitable is its purpose, and that, if its purpose is to heal the sick and relieve the suffering without hope or purpose of gain from its operation, it is charitable. We held in the *Associated Hospital Case* that the gain or profit which destroys the charitable character of a corporation is that which inures to the benefit of its members and is not affected by the fact that the corporation's income may exceed its operating expenses. Similarly, in *Riverview Hospital v. Tomahawk* (1943), 243 Wis. 581, 584, 11 N. W. (2d) 188, this court stated with respect to whether a hospital is exempt from property taxes as a charitable institution: "The test is its origin and the objects of its organizers, its complete dedication to charitable purposes, and absolute divorce from gain to those controlling ownership." In the instant situation, the record clearly establishes that Methodist Hospital utilizes any profits for purposes that will better enable it to function as a hospital and nurses' train-

ing school. This is because profits are used for debt retirement, plant expansion, and modernization of facilities, and cannot inure to the benefit of members either currently or upon dissolution. Of course, not all nonstock corporations, which are so organized and operated that no pecuniary benefit does or can accrue to members, qualify as charitable corporations. In addition to the requirement that no pecuniary gain may accrue to its members, such a corporation must be engaged in activities generally classified as charitable in nature in order to constitute a charitable corporation. However, the care of the sick and the suffering is generally recognized as a charitable purpose.

The facts in the recent Massachusetts case of *Barrett v. Brooks Hospital, supra,* rather closely parallel those in the instant case. Plaintiff Barrett was injured from a fall off an X-ray table while a patient in defendant's hospital in February, 1952. Patients in this hospital were billed for all services, and the management endeavored to charge rates that would enable the hospital "to keep out of the red." In 1951 the hospital earned a profit. The treasurer of the hospital testified he did not know the name of any person admitted to the hospital in 1949, 1950, or 1951 as a charity patient. Moreover, there were no free beds or free rooms. The chairman of the board of trustees did not have the names of any people who had made gifts to the hospital between 1948 and 1951. During 1949 and 1950, the principal of a mortgage on the hospital building was reduced. The articles of incorporation disclosed that defendant hospital was a nonstock corporation organized to operate a hospital and to advance the science of medicine and surgery by research, with no provision permitting distribution of profits or dividends. The Massachusetts court held that the articles *prima facie* established defendant as a charitable corporation, and that the foregoing evidence with respect to its operations would not have permitted a finding that it was not a public charity.

Judgment was ordered in favor of defendant. We deem this a sound precedent to support a finding that Methodist Hospital is a charitable institution.

Respondents cite the opinion on rehearing of the Oregon court in *Ackerman v. Physicians & Surgeons Hospital* (1956), 207 Or. 646, 298 Pac. (2d) 1026, wherein the defense of charitable immunity was denied to the defendant hospital. This result turned on peculiar facts not present in the instant case, such as that the hospital was incorporated by a group of physicians who repaid themselves, out of pocketed earnings, all of their original capital contributions except one dollar each, and that the articles provided for perpetual control by these doctors and their descendants. However, we deem the following statement to be the significant part of the decision for purposes of the instant case (at pages 665, 666) : "The fact that an institution, in all other respects eleemosynary in status, can support itself and its charitable enterprises directly from the profits accrued from normal business operation does not, we think, jeopardize such an institution's character as a public charity." To deny an otherwise qualifying institution charitable status because it is efficiently organized and managed, so as to operate in the black, would be not only illogical but also extremely detrimental to the incentive for sound management in such institutions.

Respondents also place reliance upon our decision in *Carlson v. Marinette County* (1953), 264 Wis. 423, 59 N. W. (2d) 486, as interpreted in *Kojis v. Doctors Hospital, supra,* at page 370:

"We held that the county was operating its hospital in a proprietary rather than a governmental capacity and since the rate charged the plaintiff was the standard sum fixed at such amount as, with the anticipated patient load, would return revenue in excess of operating expenses as calculated by the county, it was not entitled to the charitable immunity."

This quoted statement was unfortunate and was a material factor in causing the learned trial court to deny defendant hospital's motion for summary judgment in the instant case. However, we are now satisfied from our review of the authorities that the question of the charitable tort immunity of a hospital is not dependent on whether it realizes a profit from its operations if this profit is used for purposes that will further its service, such as retiring debt and expanding facilities. The record in the *Carlson Case* disclosed that the profit realized by the county in operating its hospital was deposited in the county's general fund and was not segregated for use in expanding the hospital facilities. Thus, the decision in that case was correct but not for the reason stated in the *Kojis Case*.

On the basis of the facts of this case thus far discussed we would necessarily reach the conclusion that the institution operated by defendant Methodist Hospital is charitable in nature, and that its defense of charitable immunity for a tort committed prior to January 10, 1961, has been established. However, there are two further averments made in respondents' affidavits, in opposition to the motion for summary judgment, that must be considered. Respondents contend that these raise issues of material fact which require denial of the motion.

The first of these is the following statement appearing in the affidavit made by plaintiff's counsel: "The said defendant hospital was not, at the time the injury herein complained of occurred, a charitable organization." In *Schau v. Morgan* (1942), 241 Wis. 334, 343, 6 N. W. (2d) 212, this court held that a similar statement, made in an affidavit filed in opposition to a motion for summary judgment, was a conclusion of law and not an evidentiary fact as required by the summary-judgment statute, sec. 270.635, Stats. Therefore, it is insufficient to raise an issue of material fact.

The second averment is: "That in the operation of said hospital, direct monetary benefits accrue to the members of the defendant Jackson Clinic; that all members of the Jackson Clinic are on the staff of said hospital." However, the uncontroverted facts are that no member of the Jackson Clinic is a member of the Methodist Hospital corporation, serves on its board of directors, or receives any direct remuneration from the hospital. Some clinical services are rendered to hospital patients by Jackson Clinic. The hospital bills its patients for these services and the clinic is reimbursed at a rate not exceeding normal hospital rates, but reduced by an experience percentage of uncollectible accounts, thereby sharing in the adjustment for services rendered to patients unable to pay. The business policies of the hospital are determined by the board of directors, not the medical staff. Other physicians are on the staff besides those connected with the Jackson Clinic. We interpret that part of this averment which states that direct monetary benefits accrue to the members of the Jackson Clinic from the operation of the hospital, in light of the other undisputed facts in the record, as merely an allegation that the members of the clinic benefit financially as a result of furthering their medical practice because of being on the staff. There is a material difference between this situation and that present in *Riverview Hospital v. Tomahawk, supra*. In the latter case, a physician organized the hospital and controlled the board of directors, and the hospital was conducted primarily to further his medical practice. These determinative facts are not present in the instant case. We determine that the averment here under consideration presents no issue of fact which requires a trial to resolve.

The courts in some jurisdictions have denied the defense of charitable tort immunity to hospitals in a situation where the injured plaintiff is a paying patient. The rationale of these decisions is not that the exacting of pay by a hospital

destroys its status as a charitable hospital. Rather, it is that imposing a charge for service removes the basis for the defense of immunity on the theory that these charges provide revenue from which the hospital can defray damage claims without invading its trust funds, *i.e.,* capital. In the *Kojis Case* we abolished the tort immunity of charitable hospitals prospectively with respect to paying patients. The reason we assigned for acting prospectively was in order to enable hospitals to protect themselves by procuring insurance covering future tort claims. On principle we now can perceive of no justification for limiting the abrogation of the charitable immunity to paying patients, thus by implication excluding indigent or nonpaying patients. In fact, the poor, who sustain injury as the result of negligent acts of charitable institutions, or their agents, or employees, should not be discriminated against by a rule which would retain the defense of charitable immunity against their claims for damages, and abolish it with respect to more financially blessed citizens who are able to pay for all services received at the hands of charitable organizations. We doubt if the insurance now carried by charitable institutions against liability for tort makes any distinction between paying and charitable patrons. We make these observations to indicate that the rule of the *Kojis Case* abolishing charitable tort immunity may not be limited to situations where a charge or fee was being paid for the services being rendered to the injured person. See Note, 1961 Wisconsin Law Review, 509.

*By the Court.*—Order reversed, and cause remanded with directions to enter a judgment dismissing the action as to defendant Methodist Hospital.