Alfred L. WENGER and Laura E. Wenger,
Plantiffs-Appellants,

v.

WISCONSIN DEPARTMENT OF REVENUE,
Defendant-Respondent.

Court of Appeals

*Nos. 82–264, 82–265, 82–266. Submitted on briefs September 2, 1982.—Decided November 23, 1982.*
(Also reported in 327 N.W.2d 209.)

For the plaintiffs-appellants the cause was submitted on the brief of *Joseph W. Weigel* of *Weigel Law Firm* of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, *Daniel D. Stier,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

SCOTT, J.   Alfred and Laura Wenger appeal from a judgment upholding a determination by the Wisconsin Tax Appeals Commission (Commission) that the Wisconsin Department of Revenue (Department) correctly denied the Wengers' petition for redetermination of in-

come tax assessments made against them for the years 1974–77 and correctly assessed a twenty-five percent negligence penalty against the Wengers for the year 1977. The issues on appeal are whether the income from property and lifetime services assigned by the Wengers to a family trust is taxable to the Wengers as individuals and whether the Department properly assessed a negligence penalty for the year 1977. Because we find that the Commission correctly interpreted the applicable law and that its findings of fact are supported by substantial evidence, we affirm.

A summary of the facts as found by the Department and the Commission is as follows. In January 1973, Alfred Wenger owned a fifty percent partnership interest in the Millard Machine Shop. The other fifty percent interest was held by R. Logan Wenger, Alfred's son. On June 25, 1973, the elder Wenger set up a trust called the Alfred L. Wenger Family Estate, A Trust. The trust instrument was signed by Alfred Wenger as grantor-creator and by his wife, Laura, and his son as trustees. The trust instrument gives the trustees virtually unlimited power over the trust and does not identify any beneficiaries.

On July 2, 1973, Alfred Wenger conveyed both real and personal property and leased two automobiles to the trust. The following month, Wenger conveyed "the exclusive use" of his "lifetime services and all the currently earned remuneration therefrom" to the trust. Laura Wenger, an employee of Walworth county, also transferred her property to the trust.

After creation of the trust, the Wengers retained complete control over all of their income and assets. The trust hired Alfred as its manager and Laura as its secretary. Alfred also became a trustee of the trust. R. Logan Wenger resigned as a trustee and was later reappointed.

In 1974, the trust paid the elder Wengers' personal deductible expenses, such as medications and medical care; it also paid the Wengers' nondeductible living expenses, such as housing, transportation and clothing. In addition, the trust paid Alfred a salary as manager of the trust and Laura a salary as secretary.

The trust filed a 1974 return reporting Alfred Wenger's partnership income and the wages that Laura Wenger received from Walworth county. The Wengers filed returns reporting only the income received as trust manager and secretary and some interest income. During the tax years 1975–76, the trust and the Wengers submitted returns that followed the pattern of the 1974 returns.

On January 12, 1976, the Department made adjustments to the Wengers' individual returns for 1974. It transferred the income reported by the trust to the Wengers individually and issued an assessment to each of them. When the trust and the Wengers submitted returns for 1977 that followed the pattern of the three previous years, the Department assessed a twenty-five percent negligence penalty against the Wengers for filing incorrect 1977 returns.

The Wengers argue at length that they had the constitutional right to create a family trust and that Mr. Wenger had a right to assign his lifetime services to the entity that they had created. Neither the Commission nor this court questions the Wengers' right to organize their economic affairs as they see fit. The primary question before us is whether the arrangements that the Wengers made were sufficient to shift the incidence of taxation from themselves to the trust. We agree with the Commission that the Wengers did not succeed in shifting their tax burden to the trust.

This court must affirm the Commission's determination that the Department correctly assessed additional

income tax against the Wengers unless we find that the Commission "has erroneously interpreted a provision of law" or that its action "depends on any finding of fact that is not supported by substantial evidence in the record." Sec. 227.20(2), (5) and (6), Stats. An administrative agency is to be given broad power within its jurisdiction. *Transport Oil, Inc. v. Cummings,* 54 Wis. 2d 256, 265, 195 N.W.2d 649, 654 (1972). Where an agency has particular expertise, this court should not substitute its judgment for the agency's application of a particular statute to the found facts if a rational basis exists in law for the agency's interpretation and the interpretation does not conflict with the statute's legislative history, prior decisions of the Wisconsin appellate courts or constitutional prohibitions. *Pabst v. Department of Taxation,* 19 Wis. 2d 313, 323–24, 120 N.W.2d 77, 82 (1963). We will uphold an agency's findings of fact whenever the findings are supported by substantial evidence in view of the entire record. *Kenosha Teachers Union Local 557 v. Wisconsin Employment Relations Commission,* 39 Wis. 2d 196, 204, 158 N.W.2d 914, 918 (1968).

In upholding the Department, the Commission relied on two principles basic to the internal revenue code: income is taxed to the persons who earn it, *Lucas v. Earl,* 281 U.S. 111 (1930), and the income of a grantor trust is taxable to the grantors, 26 U.S.C. secs. 672(a) and (b), 674(a) and 677(a). Those principles, in combination with the Commission's finding that after the creation of the trust the Wengers retained complete control over all of their income and assets, require affirmation of the Department's action.

Under the *Lucas* principle, where an assignment of lifetime services has been made to an entity, identification of the proper taxpayer turns on whether it is the person or the entity that in fact controls the earning of

the income. *Vnuk v. Commissioner of Internal Revenue,* 621 F.2d 1318, 1320 (1980). Where a taxpayer simply assigns his lifetime services and income earned from the performance of those services to a trust and the taxpayer rather than the trust has the ultimate direction and control over the earning of the compensation, the conveyance is ineffective to shift the tax burden from the taxpayer to the trust. *Id.* Substantial evidence in the record supports the Commission's finding that Alfred Wenger had complete control over his work as a machinist. Wenger's partnership income was, therefore, taxable to him rather than to the trust. Laura Wenger did not even formally convey her lifetime services to the trust. Her wages were properly taxable to her.

Under the grantor trust provisions of the internal revenue code, trust income is taxable to the grantor (with certain exceptions) where he can control beneficial enjoyment of trust income without approval or consent of any adverse party. An adverse party is "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust." 26 U.S.C. sec. 672(a). The Commission's conclusion that there were no beneficiaries of the Wenger trust and, hence, no adverse parties is supported by substantial evidence in the record. It is uncontested that Alfred and Laura Wenger constituted a majority of the trustees and were the only recipients of trust income during 1974 and the subsequent years in question. Because the Wengers did not sufficiently relinquish control of the assets that they transferred to the trust, they are properly taxable for the income from those assets.

The final issue concerns the twenty-five percent negligence penalty assessed by the Department against the

Wengers for the year 1977. We agree with the Commission that the penalty was properly assessed.

Section 71.11(47), Stats., provides:

> If any person required under this chapter to file an income . . . tax return files an . . . incorrect return, unless it is shown that such filing was due to good cause and not due to neglect, there shall be added to such person's tax for the income year 25% of the amount otherwise payable on any income subsequently discovered . . . .

The burden of proof is on the taxpayer to establish good cause for improper reporting. *Grefkowicz v. Wisconsin Department of Revenue,* 9 W.T.A. 231 (1972); *see also Vnuk,* 621 F.2d at 1321.

We agree with the Commission that the Wengers did not show good cause for the filing of an incorrect 1977 return. The Wengers were aware that both the Department and the Commission regarded their trust arrangement as ineffective to shift their burden of taxation onto the trust. The Wengers, nonetheless, persisted in filing returns that understated their taxable income. Given the circumstances, the negligence penalty was fully justified.

*By the Court.*—Judgment affirmed.