BARGO FOODS NORTH INC., Petitioner-
Appellant,

REPUBLIC AIRLINES, Intervenor-Appellant,

v.

DEPARTMENT OF REVENUE, Respondent.

Court of Appeals

*No. 86–0873. Submitted on briefs May 6, 1987.—Decided
September 24, 1987.*

(Also reported in 415 N.W.2d 581.)

■■■■■■■■

■■■■■■■■

■■■■■■■■

For the petitioner-appellant and intervenor-appellant the cause was submitted on the brief of *Pamela B. Anderson* and *Frederic J. Brouner* and *DeWitt, Sundby, Huggett, Schumacher & Morgan, S.C.,* of Madison.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Edward S. Marion,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J. The Department of Revenue assessed a sales and use tax deficiency against Bargo Foods North Inc., which provides food and beverage kits at Mitchell Field in Milwaukee to commercial airlines for in-flight use. The $211,378.54 deficiency is based on Bargo's catering of airline meals for Republic Airlines between 1978 and 1981. Bargo petitioned the Wisconsin Tax Appeals Commission for review, and Republic intervened. The commission affirmed the assessment. Bargo and Republic sought ch. 227, Stats., review in circuit court. Bargo and Republic appeal from the trial court's judgment affirming the assessment. We affirm.

The issues are (1) whether Bargo's sale of meals to Republic was a "sale for resale" and therefore not subject to sales tax, (2) whether Wis. Adm. Code sec. Tax 11.87(2)(j) conflicts with a federal regulation, and (3) whether a Milwaukee County Airport charge to Bargo is a "tax" which must be excluded in determining Bargo's gross receipts.

We conclude from the found and undisputed facts that the department could rationally determine that Bargo's sales of airline meals to Republic were subject to sales tax. Whether Wis. Adm. Code sec. Tax 11.87(2)(j) conflicts with the federal regulation is moot, since we reach our decision without reference to the administrative rule. We conclude that the airport charge is not a tax, and therefore affirm.

## FACTS

The commission's findings of fact are uncontested. The commission found that Bargo sold meals and beverage kits to Republic. Bargo placed the meals into ovens on Republic's planes at Mitchell Field in Milwaukee. Republic employees heated and served the meals to passengers in flight at points beyond the boundaries of Wisconsin.

Between 1978 and 1981, the Civil Aeronautics Board regulated airline operations. A CAB regulation required that food service be provided at "no charge." Republic did not set a price for meals it served to its passengers. Neither Republic nor travel agents making reservations for Republic advised customers of a sales price for the meal. Passengers were not paid rebates for meals they refused. Republic sold alcoholic drinks to its passengers, who paid in cash.

While the commission did not so find, a Republic witness testified that if a flight has insufficient meals for the passengers, those who do not receive a meal are given a voucher good for a meal of the type served. If for some reason such as weather, passengers are not served a meal, they are given a voucher so that they can have a meal at destination. The department does not contest the accuracy of that testimony.

591

Republic did not give Bargo a resale certificate certifying that the meals it purchased were for resale. Bargo has not charged Republic a sales tax.

Milwaukee County owns Mitchell Field. Milwaukee County and Bargo entered an agreement by which Bargo had the right to operate its catering business at the airport for, depending on the time in question, a fee of 7% or 8% of its gross receipts on the sale of prepared foods and beverages to aircraft using the airport. The agreement was entered pursuant to a County Airport Ordinance, sec. 4.06 "Fixed Rentals and Fees." Bargo passed on the airport charge to Republic, dollar for dollar. Airport charges between 1978 and 1981 totaling $245,860 were included in the gross receipts upon which the department calculated the deficiency assessment.

## TAX APPEALS COMMISSION DECISION

The commission concluded that the sale of meals by Bargo to Republic was not for resale within the meaning of sec. 77.51(4), Stats. 1983, but rather was a transfer without valuable consideration within the meaning of sec. 77.51(4)(k).[1] The commission also concluded that the airport charge Bargo paid to the county was not a tax and was not deductible from gross receipts, within the meaning of sec. 77.51(11)(a)4., Stats. The commission therefore affirmed the sales tax assessment against Bargo.

## STANDARD OF REVIEW

We determine if the agency's decision is correct without deference to the trial court's decision. *Hemstock Concrete Products v. LIRC,* 127 Wis. 2d 437, 439,

[1]All references are to the 1983–84 Wisconsin Statutes.

380 N.W.2d 387, 389 (Ct. App. 1985). Where an administrative agency has particular expertise,

> this court should not substitute its judgment for the agency's application of a particular statute to the found facts if a rational basis exists in law for the agency's interpretation and the interpretation does not conflict with the statute's legislative history, prior decisions of the Wisconsin appellate courts or constitutional prohibitions.

*Wenger v. Department of Revenue,* 109 Wis. 2d 677, 681, 327 N.W.2d 209, 212 (Ct. App. 1982). The Department of Revenue has such expertise.

## RETAIL SALE

■ Wisconsin imposes a retail tax for the privilege of selling personal property at retail. Sec. 77.52(1), Stats. A "sale" is a transfer of tangible personal property for use or consumption but does not include a transfer for resale. Sec. 77.51(4), Stats. "[T]he level at which the tax is to be collected is determined by identifying the retail sale." *Dept. of Revenue v. Milwaukee Refining Corp.,* 80 Wis. 2d 44, 50, 257 N.W.2d 855, 858 (1977). A sale at retail is "a sale to one who uses or consumes, but in any event does not resell the property." *Id.*

Appellants contend that because Bargo's transfer of airline meals to Republic was a "sale for resale," it was not subject to the sales tax. They note that the *Milwaukee Refining* court said that the phrase "use or consumption but not for resale as tangible personal property" in sec. 77.51(4), Stats., "can be understood only as meaning the final and ultimate employment of the property which results in its withdrawal from the

marketplace of goods and services." *Milwaukee Refining* at 51, 257 N.W.2d at 859. They argue that the retail sale occurs when the passengers consume the meals.

However, sec. 77.51(4)(k), Stats. 1983, defines "retail sale" to include "[a]ny sale of tangible personal property to a purchaser even though such property may be used or consumed by some other person to whom such purchaser transfers the tangible personal property without valuable consideration ...."[2] Thus, the question is whether Republic transferred the meals to its passengers for a valuable consideration. If that is the case, then the transfer to Republic was a "sale for resale" and not subject to the sales tax. If not, then the transfer to Republic was a "retail sale" and taxable.

Other jurisdictions are split on the issue.[3] *State v. Hertz Skycenter, Inc.*, 317 So. 2d 324, 325 (Ala. 1975), held that the retail sale did not occur upon sale of meals to the airline. However, this decision was based on a stipulation that the meals sold by the food vendor were in turn sold to and consumed by the airline passengers. *Undercofler v. Eastern Air Lines, Inc.*, 147 S.E.2d 436, 442 (Ga. 1966), held that because the airlines bought in-flight meals from its suppliers for resale to its passengers, the sale to the airlines was not taxable. *State v. Hertz Skycenter, Inc.*, 317 So. 2d 319, 322 (Ala. Civ. App. 1975), *aff'd* 317 So. 2d 324 (Ala. 1975), discusses an unpublished Michigan circuit court decision which apparently held that since the price for

---

[2]Section 77.51(4)(k), Stats. 1983, is now sec. 77.51(14)(k), Stats. 1985.

[3]We do not consider cases arising under the Fair Labor Standards Act since the airline cases are more on point.

the airline ticket included the charge for the meal, the ticket sale was the retail sale of the meal.

Two jurisdictions have concluded that the retail sale occurred when the supplier sold the meals to the airline. *Air Jamaica, Ltd. v. State Dept. of Rev.,* 374 So. 2d 575, 578 (Fla. Dist. Ct. App. 1979), observed that, while the ticket price included the meal, the price of the meal was about one percent of the cost of the ticket. The ticket price covered meals, baggage handling, flight attendant and flight personnel services, and fuel. The court held that the meals were not resold to passengers, saying, "It is artificial to attempt to divide this package of services into separate sales and say that one of them is the sale of meals furnished to passengers." *Id* at 578. *American Airlines, Inc. v. Department of Revenue,* 319 N.E.2d 28, 31 (Ill. 1974), held that because furnishing meals to passengers was "a commercial amenity and operating expense," the airline did not sell the meals to its passengers.

The latter view persuades us that the department's decision has a rational basis. Republic sold air transportation, not meals. Unlike the in-flight alcoholic beverages which Republic sold for cash, the meals were included in the ticket price. The cost of the meal was not refundable and Republic did not set a price on the cost of the meal. The fact that the airline would provide meal vouchers rather than refunds for passengers who could not be served in flight shows only that a meal would be served on the ground if not in flight. We conclude that the department could rationally determine that the meals were transferred to Republic's passengers without valuable consideration and that the retail sale therefore occurred when Bargo sold the meals to Republic.

We do not decide whether Wis. Adm. Code, sec. Tax 11.87(2)(j) conflicts with a federal regulation.[4] This rule applies only to sales while the aircraft is operating in or over Wisconsin. The commission found that Republic served the meals outside Wisconsin.

## INCLUSION OF TAX IN GROSS RECEIPTS

Appellants argue that the Milwaukee County airport fee was a tax because it was used to support the running of the airport and was imposed pursuant to a county ordinance. Section 77.51(11)(a)4., Stats., excludes from the measure of gross receipts "any tax imposed by any municipality of this state ... if measured by a stated percentage of sales price or gross receipts ...." Since the department failed to exclude the airport fee from Bargo's gross receipts, appellants contend that the sales tax must be recomputed.

Taxes are "enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs." *State ex rel. Bldg. Owners v. Adamany,* 64 Wis. 2d 280, 289, 219 N.W.2d 274, 279 (1974), quoting 1 Cooley, *Taxation* sec. 1 (4th ed.,

[4] Wisconsin Adm. Code sec. Tax 11.87(2)(j) provides in pertinent part:

> *Transportation Companies.* The sale of meals and liquor by transportation companies (e.g., airlines or railways) to a customer while operating in or over Wisconsin for a specific charge shall be taxable. Such meals and beverages may be purchased by the transportation companies without tax for resale. However, if the sales price of the meal or beverage shall not be separately stated to the customer, the tax shall apply to purchases of such meals and beverages by transportation companies.

1924). "A tax is an exaction, usually of money, by the government for the support of government." *Id.*

Municipal corporations possess both a governmental character and a proprietary or private character. *Piper v. Madison,* 140 Wis. 311, 314, 122 N.W. 730, 731 (1909). A municipality is regarded as a private corporation as to contracts made in its proprietary character. *Id.* Whether a municipal operation is governmental or proprietary is a question of law.

The *Piper* court held that a city's selling and distributing water to its citizens is a proprietary function, since it is of a private nature, voluntarily assumed by the city for its residents. *Piper* at 314, 122 N.W. at 731. Similarly, a city's operation of a hospital is a proprietary function. *Carlson v. Marinette County,* 264 Wis. 423, 427, 59 N.W.2d 486, 488 (1953). A municipality's operation of an airport is sufficiently analogous to those activities as to be proprietary.

The weight of authority from other jurisdictions is that a municipality's operation of an airport is a proprietary function. *Southern Airways Co. v. De Kalb County,* 118 S.E.2d 234, 239 (Ga. Ct. App. 1960); *Atcheson v. Braniff International Airways,* 327 S.W.2d 112, 117 (Mo. 1959); *Lock v. City of Imperial,* 155 N.W.2d 924 (Neb. 1968); *Heitman v. Lake City,* 30 N.W.2d 18, 22 (Minn. 1947); *Coleman v. City of Oakland,* 295 P. 59, 61 (Cal. Dist. Ct. App. 1930); *see* Annot., 66 A.L.R.2d 634 (1959).

We hold that the operation of the Milwaukee county airport is a proprietary function.[5] The fees the

---

[5]*Milwaukee v. Milwaukee & S.T. Corp.,* 6 Wis. 2d 299, 94 N.W.2d 584 (1959), relied on by appellants for the proposition that the true nature of a fee is not changed because it is imposed by

county charged for Bargo's use of the airport are not taxes. Consequently, Bargo's gross receipts need not be adjusted by excluding those fees before computing the sales tax.

## CONCLUSION

We conclude that the Department's decision has a rational basis in law. We defer to it and affirm.

*By the Court.*—Judgment affirmed.

contract, is not on point. In that case, the Milwaukee common council adopted a franchise ordinance prescribing an annual license fee for a trackless trolley operation, based on $10 per passenger seat for each vehicle. The transportation company accepted the terms of the ordinance. The question was whether the "license fee" was a tax. The court held that control of streets is a governmental function and that the fee was a tax notwithstanding the contractual nature of the ordinance. Our decision rests on the conclusion that operation of the airport is a proprietary rather than a governmental function, not on the nature of the agreement between the county and Bargo.