SCHUMACHER, Appellant, vs. EVANGELICAL DEACONESS SOCIETY OF WISCONSIN, Respondent.

*March 6—April 30, 1935.*

*Robert W. Hansen* of Milwaukee, for the appellant.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* and *Kenneth E. Smart* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

FOWLER, J.   In this case a demurrer *ore tenus* was interposed, with which was coupled an admission by the plaintiff that the defendant hospital is a charitable institution.   The demurrer and admission were interposed and made with the purpose of raising the single issue whether a hospital that is a charitable institution is exempt from liability for negligence in the selection of its internes, nurses, and other servants, as it concededly is for the negligence of these employees in the performance of their duties.

The point of the appellant is that the defendant corporation, although it be a charitable institution, must use due care in the selection of its employees to whom it intrusts the care and treatment of its patients, and that this is a nondelegable duty, for nonperformance of which it is responsible to the same extent as are other corporations.

As above stated, it is conceded that a charitable hospital is not liable for the negligence of its employees.   This rule was adopted by this court in *Morrison v. Henke,* 165 Wis. 166, 160 N. W. 173, and it was extended beyond the care of the sick to passers-by on the street injured by the negligent dropping of articles from windows by servants of a charitable institution not a hospital.   *Bachman v. Young Women's Christian Asso.* 179 Wis. 178, 191 N. W. 751.   In the *Morrison Case, supra,* it seems to have been assumed that the defendant therein might have been held responsible had the action been grounded on negligence in selection of the nurse whose negligence caused the injuries of the plaintiff.   While a multitude of cases are cited in the opinion as holding that "in the absence of any negligence in their selection, charitable hospitals are not liable to their patients for the torts of their

servants," this does not necessarily imply that if there is negligence in the selection of their servants such hospitals are responsible for the latter's torts. Two cases are cited in the opinion as holding that charitable institutions are "liable to their servants for failure to perform nondelegable duties which as masters they owed them," and others as holding that "liability has also been enforced in favor of strangers or employees." See page 169 of the opinion for the citations to the cases thus referred to. There was a motion on the trial of the *Morrison Case, supra,* to submit it to the jury on the theory of negligence in the selection of the nurse, whose negligence caused the injuries, and denial of the motion was upheld on the stated ground that the evidence was insufficient to support a finding of negligence in her selection. Notwithstanding these statements in the opinion, the question here involved was not decided or involved in that case and has never been decided by this court. In deciding the question that was decided, the opinion, after stating the grounds on which other courts have placed the exemption of liability for torts of servants, states:

"Without discussing the relative merits of these different grounds, we prefer to rest our decision upon the principle that since these charitable hospitals perform a *quasi*-public function in ministering to the poor and sick without any pecuniary profit to themselves, the doctrine of *respondeat superior* should not be applied to them in favor of those receiving their charitable services."

After a quotation stating the basis of the rule of *respondeat superior* to be "that he who expects to derive advantage from an act which is done by another for him must answer for any injury which a third person may sustain from it," the opinion states:

"Since the hospital derives no profit from its work and since it is founded for the sole purpose of conserving the health and life of all who may need its aid, . . . thus acting

as a good Samaritan, justice and sound public policy alike dictate that it should be exempt, from the liability attaching to masters whose only aim is to engage in enterprise of profit or of self-interest. The patient who accepts the services of such an institution, if injured therein by the negligence of an employee, must be content to look for redress to such employee alone. The principle invoked is analogous to that which exempts municipalities from the rule of *respondeat superior* in the discharge of their governmental functions."

The basis of the rule adopted by this court exempting charitable hospitals from liability for the negligence of their servants is above stated to be that, because these hospitals perform a *quasi*-public function, akin to that performed by municipalities in performing governmental functions, justice and public policy require that the doctrine of *respondeat superior* shall not be applied. The reason for the rule as applied to the negligent acts of servants applies with equal force whether the negligent act be of a nurse or other employee employed by the hospital, or the negligence of its manager or managing board in selecting the nurse or other employee. Furthermore, the hospital can act only through its agents in selecting its employees. The agent who selects the employees is an agent of the hospital corporation in no different sense than is the employee whom the corporation through its agent selects. The duties of the two agents are different, but the agency relation is the same, and if the doctrine of *respondeat superior* does not apply to the acts of one such agent, it should not to the acts of the other.

The doctrine that charitable institutions are responsible for negligence in selecting their employees is directly rejected in *Roosen v. Peter Bent Brigham Hospital,* 235 Mass. 66, 126 N. E. 392; *Adams v. University Hospital,* 122 Mo. App. 657, 99 S. W. 453; *Fordyce v. Woman's C. N. L. Asso.* 79 Ark. 550, 96 S. W. 155; *Ettlinger v. Trustees of Randolph Macon College,* 31 Fed. (2d) 869; *Bodenheimer v. Con-*

*federate Memorial Asso.* 68 Fed. (2d) 507. In the last case cited *certiorari* to the supreme court of the United States was denied. 292 U. S. 629, 54 Sup. Ct. 643. It is indirectly rejected in *Lyle v. National Home,* 170 Fed. 842, and *Abston v. Waldon Academy,* 118 Tenn. 24, 102 S. W. 351, wherein the act of negligence involved in the former was the act of its officers in diverting and polluting water from a spring, and in the latter the failure of the officers to maintain fire escapes as required by law, and the duties violated in these instances were as nondelegable as any may be.

Counsel for appellant cites a multitude of cases, sixty-seven in number, if the count of respondent's counsel is correct, in the opinions whereof it is held, in effect, as stated in 10 Fletcher, Cyc. Corp. (Perm. Ed.) p. 581, that a "charitable corporation is under a nondelegable duty of exercising care in selecting physicians, nurses and other employees who attend to the needs of its patients," and responsible for their negligence to the same extent as other private corporations "if it has been guilty of negligence in employing or retaining them. . . ." But counsel for respondent points out that in fifty-five of these cases the negligent acts charged were those of the employees themselves, so that the statements were *obiter.* He also points out, as the fact is, that the exception from the exemption is based upon the clause inserted in a statement in *McDonald v. Massachusetts General Hospital,* 120 Mass. 432: "If there has been no neglect on the part of those who administer the trust and control its [hospital's] management, and if due care has been used by them in the selection of their inferior agents. . . ." That case was based directly upon the negligent acts of the hospital's employees, and the matter of the selection of those agents was not at all involved. The suggestion that liability might exist in case of negligence in selection was repudiated in the later case of *Roosen v. Peter Bent Brigham Hospital, supra,* a case based

on negligence in selection of agents, the opinion in which states respecting the statement above quoted from the *Mc-Donald Case:*

"That sentence, however, was merely precautionary. It bounded the question presented by the facts then before the court. It simply showed the extent of the decision. It does not purport to be a comprehensive or exclusive statement. The correlative assertion, to the effect that there is liability of the hospital in cases where there has been carelessness on the part of the managers in the selection of servants and agents, is neither express or implied."

The rule of the *Roosen Case* exempting charitable institutions from the doctrine of *respondeat superior* in cases of negligent selection of employees is inferentially approved in the *Bachman Case, supra,* in which this court applied the rule of the *Roosen Case* in the case against the Young Women's Christian Association, where it is noted (p. 181) that the *Roosen Case* holds that "there would be no liability, even though the negligence relied upon for recovery was that of the association in negligently selecting incompetent servants." The true basis upon which charitable institutions are exempted from the rule of *respondeat superior* was based by the decision of this court in the *Morrison Case, supra,* is again stated in the *Bachman Case,* wherein it is stated (p. 180), to be "fully treated in the case of *Apfelbacher v. State,* 160 Wis. 565, 575, 152 N. W. 144," where it is stated:

"The doctrine of *respondeat superior,* while an ancient one in English law, is not one that rests upon direct primary principles of justice. These principles require that the person actually committing the wrong should alone respond in damages. The doctrine rests rather upon secondary principles deduced from primary conceptions of justice. It rests upon the idea that where an enterprise is carried on for the financial benefit of the master it is considered just that he should answer for the tort of his servant in conducting it because he is deemed to profit financially by its being carried on. For the same reason municipalities carrying on proprietary enterprises for gain, as for instance the sale of water

to its inhabitants, are held to respond in damages for the tort of their servant in so doing, . . . while if they act in a governmental capacity where there is no question of financial profit but only a service rendered for the general welfare of its inhabitants, as in the maintenance of a public playground, there is no liability for the negligence of its agents."

It is said in *Fordyce v. Woman's C. N. L. Asso., supra,* that the rule of the cases that hold a charitable institution is liable for negligence in selecting its servants, while not liable for the negligence of the servants themselves "seems to be a compromise between two irreconcilable principles." And so it is. That no logical or reasonable basis for distinction exists is clearly stated in an article in 6 St. Louis Law Review, p. 229, as follows:

"The law has always favored and fostered public charities in ways too numerous to mention, because they are the most favorable adjuncts of the state in the promotion of many of the purposes for which the state itself exists. That being so, what difference can it make whether the tort is that of the corporation itself or its superior officers and agents, or that of its servants? Liability for the one would as effectively embarrass or sweep away the charity as the other. It would therefore be illogical to admit liability for the one and deny it for the other."

It is there further stated that the rule "is merely an exception to the rule of *respondeat superior* which itself is based upon reason of public policy." The reason for that rule of public policy does not apply in cases of charitable institutions; therefore the rule does not apply to them. Upon reason, if a charitable hospital is exempt from liability for negligent acts of its incompetent employees committed upon its patients, it is exempt from liability for negligence of its managing agents in selecting those incompetent employees. Precisely the same reason lies for exemption in both cases, and it lies to precisely the same extent. A physician is in many cases the managing agent of a hospital. That such a hospital should be exempt from liability for the tort of its

managing agent in himself negligently performing an operation which he was incompetent to perform, and should be liable for the negligence of the same physician in delegating another physician to perform it who was incompetent and negligently performed it, is utterly irreconcilable, in view of the basis for exemption in the first instance.

*By the Court.*—The judgment of the circuit court is affirmed.