PLASA, Appellant, vs. LOGAN and others, Respondents.*

*May 6—June 3, 1952.*

*Ethan B. Lemke,* attorney, and *Nathanael A. Lemke* of counsel, both of Milwaukee, for the appellant.

* Motion for rehearing denied, with $25 costs, on October 7, 1952.

For the respondents there was a brief by *Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *F. Halsey Kraege*.

FRITZ, C. J.   As far as here material the allegations in plaintiff's complaint are to the following effect:

That on premises leased to defendants they operated a hospital located on the west side of a public street and sidewalk. That said sidewalk extended north and south on the east side of the hospital building and across a driveway which entered the premises from the east and extended westerly along the south side of the building. That on February 21, 1949, at 8:30 a. m., plaintiff while walking carefully upon said sidewalk, slipped upon an accumulation of ice covered with a thin coat of flaky snow adjacent to and on the east side of the building and on part of the sidewalk across the driveway.

That said accumulation of ice was caused by defendants' negligence in discharging water artificially collected by them in such manner that it naturally and probably ran to and over the public sidewalk with substantially the same effect as if discharged directly on the public sidewalk; and water from melting snow on the roof of the hospital building was artificially caught and collected in drains and gutters on said building and discharged through drainpipes directly upon the surface of the ground at the rear and southwesterly part of the premise adjoining said building, whence such artificially collected and discharged water ran easterly in a perceptible stream along the hospital driveway onto and over the public sidewalk, where upon a drop in temperature below freezing, it froze and left a slippery patch of ice on said sidewalk which made said sidewalk unsafe and treacherous to persons walking thereon. That the winter snow had accumulated on said hospital-building roof from December 1, 1948, down to the time that plaintiff slipped on the ice formed on the sidewalk adjacent to the hospital building. That defendants knew or ought to have known of such accumulation of snow, and that on warm days said snow would thaw and that the water therefrom, as artificially collected and discharged by them, would run to and over the public sidewalk, where-

upon a drop in temperature below freezing, it would freeze and render the sidewalk unsafe; and that the ice on which plaintiff slipped was caused by the freezing of water thus negligently discharged from the roof of said hospital building.

Upon defendants' demurrer to the amended complaint, plaintiff's attorneys contended that the case is governed by the decision in *Adlington v. Viroqua,* 155 Wis. 472, 144 N. W. 1130. In that case the jury found that the public sidewalk was defective by reason of the ice thereon; such accumulation was formed from water discharged near the walk by way of a conveyor pipe leading to and taking water from the building in question; *ordinary care was not exercised in respect to the pipe and gutter and the culvert leading therefrom; and such fault was the proximate cause of plaintiff's injury.* On that verdict judgment was granted in favor of plaintiff. On defendants' appeal they contended that the facts found by the jury did not indicate any violation of duty on the part of defendant. This court stated (p. 477) :

". . . it was a fair question for the jury as to whether appellants did not act unreasonably and, so, negligently, in discharging the water from their conveyor pipe in such a manner as to render, natural and probable, an unsafe condition of the sidewalk where that could have been avoided without any great inconvenience by keeping clear the conduit under the walk. . . . but it was the duty of the abutting owners to act reasonably to prevent and remedy a condition rendering the walk unsuitable for use. With the duty to act reasonably in ridding the premises of surface water, and duty as regards the safety of the walk, there was evidence to carry the question of negligent breach to the jury."

Plaintiff relies upon this statement in the *Adlington Case* that (p. 476) :

"The principle is that ordinary care for the safety of others is not consistent with such conduct as that of a person accumulating water falling upon his premises into a body and discharging the same so as to, naturally and probably, result in rendering the premises receiving the flow in the artificial

way, unsuitable for their ordinary use. . . . The fact that accumulated water is not discharged directly on the lower premises but is released near by and reaches such premises with substantially the same effect as if discharged thereon, makes no difference. [Citation.] So here the fact that the water was discharged from defendants' conveyor pipe a few feet from the edge of the sidewalk, is of little consequence, so long as the natural and probable result was that it would reach the sidewalk with substantially the same consequences as if discharged at or on the walk."

Plaintiff claims that the facts in the case at bar are almost identical with those in the *Adlington Case,* because in both cases the water originated from the roof of a building and *was artificially accumulated and artificially discharged* directly upon the surface ground so as to run, naturally and probably, toward and over the walk; the clogged culvert in the *Adlington Case* makes that case the same as the case at bar where there was no culvert; in the *Adlington Case,* the discharge of water from the roof was at a point "near" the walk; in the present case, the discharged water *naturally and probably ran along the driveway in a perceptible stream to and across the walk,* and defendants knew or ought to have known the same. Therefore plaintiff contends it is at least a question for the jury, to be determined in the light of the evidence to be produced at the trial, whether the natural and probable result of the said artificial accumulation and artificial discharge of water by defendants was such that the water would reach the sidewalk with substantially the same consequences as if discharged at or on the sidewalk; and that defendants had a legal duty not to discharge water artificially accumulated by them in such manner as would with reasonable probability create an unsafe condition on the public sidewalk.

Defendants in the case at bar contend that the decision in the *Adlington Case* is not applicable because in that case the roof water from a large building was drained by pipe into a private alley on the premises only a few feet from the public

walk. A culvert constructed under the walk to run the water off had been obstructed and useless for some time. The icy condition of the walk had been continuous for three weeks prior to the accident, and the court held that such circumstances presented a jury question. Because of those circumstances the court stated (p. 476) :

"It will be observed that when one artificially causes the surface water falling upon his premises to flow therefrom, collected into a stream, he may or may not be liable for the injurious consequences according to circumstances. The maxim that there is reason in all things, applies. . . . In view of the foregoing, it was a fair question for the jury as to whether appellants did not act unreasonably and, so, negligently, in discharging the water from their conveyor pipe in such a manner as to render, natural and probable, an unsafe condition of the sidewalk where that could have been avoided without any great inconvenience by keeping clear the conduit under the walk. . . . It is no sufficient answer to say that the culvert made the walk safe, in general, and that it was the obstructed condition, for which appellants were not at fault, which rendered the water discharged from their conveyor pipe liable to render the walk unsafe. The obstruction had existed so long, appellants must have known of it, as the jury had a right to believe. With such knowledge they continued to discharge the surface water from their premises in a manner which they knew, or ought to have known, as the jury had a right to believe, would cause an unsafe condition of the sidewalk, although such consequences could have been prevented, as the jury might reasonably have thought, by keeping the culvert clear."

However, in the case at bar, it appears from the complaint that the hospital building fronts to the east and the public sidewalk in question extends north and south in front of the building across the driveway which extends westerly from the street and along the south side of the hospital building

to the rear thereof. It is not claimed that roof water was collected and discharged at or near the front sidewalk. Instead, as the complaint alleges, the water from melting snow on the roof of the building "was artificially caught and collected in drains and gutters on the roof of said building." It was then "discharged through drainpipes directly upon the surface of the ground at the rear and southwesterly part of the premises adjoining said building." The complaint does not allege that the drain spout discharged the roof water onto the driveway adjoining the south side of the building. Instead the discharge was upon the surface of the ground at the rear and southwesterly part of the premises adjoining the building; and it is alleged that then such artificially collected and discharged water ran easterly in a perceptible stream along the hospital driveway onto and over the public sidewalk, whereupon in temperatures below freezing, it froze and left a slippery patch of ice on the walk. The discharge of the roof water to the rear of the property showed a clear intent not to divert the same to the front across the public walk and street, and any such result was merely incidental to the existence of the driveway extending from the rear and to the street in front of the property. The water could only reach the sidewalk by the natural flowage from the rear of the property.

In *Sherman v. La Crosse,* 181 Wis. 51, 193 N. W. 1004, a large building was erected on defendant's property at a right angle with the street. The front city sidewalk extended to the building which had an ordinary gable roof, and water drained from the roof on the north and south sides of the building. Snug up to the south side of the building the owner constructed a brick sidewalk, six feet in width, and extending back 31.6 feet from the front sidewalk. Prior to January 12, 1933, there had been a heavy fall of snow, and a path had been shoveled along the brick walk and the snow thrown up on either side thereof. Water resulting from melting snow

on the roof of the building, and along the brick walk, had run down said walk onto the city sidewalk, forming the icy condition on the city sidewalk upon which plaintiff slipped and fell on January 12, 1933. It was contended on behalf of plaintiff that the liability of the owner of the building was established by the case of *Adlington v. Viroqua, supra.* The court, however, stated (p. 53) :

"It will be noted that in the *Adlington Case* the owner had accumulated the water dripping from his roof in the conveyor pipe for the purpose of preventing it from running onto his own premises and discharging it in the street. There was a deliberate and intentional purpose on the part of the owner to accumulate the water and discharge it in the street. It is not contended in this case that if the water had dripped from the refining company's roof onto the ground and from there run onto the city sidewalk that the refining company would have been liable. It is claimed that the brick walk was constructed in such a manner as to accumulate the water, and that it was an artificial accumulation and not a natural flow of the water which caused the icy condition of the sidewalk.

"The brick walk involved in this case is an improvement very common to city property. . . . It is not contended that it was built for the purpose of accumulating water coming from the roof of the building and conveying it onto the city sidewalk.

"We have therefore a very usual and ordinary improvement of city property abutting on a street, not built for the purpose of accumulating and discharging water on the city sidewalk, but which, perhaps, has that incidental effect. The question is whether such an improvement, having such an incidental effect, constitutes actionable negligence on the part of the property owner when the water freezes and causes an unsafe condition of the city sidewalk. We do not think the result here should be regarded as an artificial accumulation of surface water. This brick walk, and the purpose for which

it was constructed, is in no sense comparable to the conveyor pipe, and the purpose for which it was constructed, in the *Adlington Case*. That plainly constituted an accumulation of surface water. It was constructed for that express purpose. The situation is quite different from an ordinary improvement, intended for a different purpose, which may have an incidental influence upon the natural flow of surface water. We held that the situation here did not constitute an artificial accumulation of surface water, and that no actionable negligence on the part of the refining company is disclosed by the evidence. The judgment against it is erroneous."

*By the Court.*—Judgment affirmed.