SMITH, Respondent, vs. CONGREGATION OF ST. ROSE, Appellant.*

*November 30—December 30, 1953.*

* Motion for rehearing denied, with $25 costs, on March 2, 1954.

For the appellant there were briefs and oral argument by *Emmet Horan* of Milwaukee.

For the respondent there was a brief and oral argument by *N. Paley Phillips* of Milwaukee.

CURRIE, J. This court has repeatedly held that charitable and religious corporations are not liable for the negligent acts of their employees or agents. *Morrison v. Henke* (1917), 165 Wis. 166, 160 N. W. 173; *Bachman v. Young Women's Christian Asso.* (1922), 179 Wis. 178, 191 N. W. 751, 30 A. L. R. 448; *Schumacher v. Evangelical Deaconess Society* (1935), 218 Wis. 169, 260 N. W. 476; *Baldwin v. St. Peter's Congregation* (1953), 264 Wis. 626, 60 N. W. (2d) 349. The learned trial judge in his memorandum opinion in the instant case acknowledges that this rule of immunity would prevent plaintiff from recovering from the defendant Congregation on a cause of action grounded upon negligence, but held that the complaint did state a cause of action for damages sustained as the result of a nuisance and that such rule of immunity therefore did not apply.

This court has long held that persons sustaining damages as the result of a nuisance caused or permitted by a munici-

pal corporation are entitled to recover against the municipality even though such nuisance was created as a result of acts performed by the municipality in its governmental capacity, where the relationship of governor and governed did not exist. *Harper v. Milwaukee* (1872), 30 Wis. 365; *Hughes v. Fond du Lac* (1889), 73 Wis. 380, 41 N. W. 407.; *Robb v. Milwaukee* (1942), 241 Wis. 432, 6 N. W. (2d) 222; and *Holl v. Merrill* (1947), 251 Wis. 203, 28 N. W. (2d) 363. The limitation, that in order to hold the municipality liable for damages sustained as a result of nuisance the relationship of governor and governed must not exist, would have no application to charitable or religious corporations. From the standpoint of public policy we can perceive no reason why charitable and religious corporations should be granted immunity from responding in damages for nuisances created or permitted by them if municipal corporations are denied such immunity. This question of immunity of charitable and religious corporations for nuisance is apparently one of first impression in this state.

Counsel for defendant contends that the historical reasons for granting immunity to charitable and religious organizations for the tortious acts of their agents or employees differ from those applicable to municipal corporations. For a learned discussion of the various reasons which have been advanced by courts for granting immunity to charitable and religious organizations, see the recent decision of the Washington supreme court in *Pierce v. Yakima Valley Memorial Hospital Asso.* (1953), 43 Wash. (2d) 162, 260 Pac. (2d) 765. We find it unnecessary to explore into this question of historical background because this court has long felt that the reasons for granting such immunity to charitable and religious organizations, as well as to municipal corporations, are archaic, and if this court were not bound by the rule of *stare decisis* but were passing on the question for the first time, we would accord very little weight to the historical

reasons originally advanced in support of the rule of immunity. However, we feel that it is for the legislature and not this court to change the rule of immunity at this late date after its wide acceptance over the years in the prior decisions of this court.

On the other hand, when we consider the question of the advisability of extending the rule of immunity to charitable and religious corporations for nuisance we do not feel that we are bound by any rule of *stare decisis*. The courts in a number of other jurisdictions have permitted recovery against charitable corporations and organizations of damages resulting from the maintenance of a nuisance. 10 Am. Jur., Charities, p. 688, sec. 140, and Anno. 25 A. L. R. (2d) 29, 52.

Therefore, we are of the opinion that if there are sufficient allegations in the complaint to spell out the maintenance of a nuisance by the defendant Congregation, the complaint does state a cause of action. This makes it necessary to analyze the allegations of the complaint from that standpoint. It is the theory of counsel for plaintiff that the complaint alleges that the water from the roof of the porch of the rectory, as a result of the defective or clogged downspout located at the northeast corner of such roof, was artificially collected and channeled onto the public sidewalk where it froze causing the dangerous condition which resulted in the plaintiff falling and slipping thereon, and that such condition constituted a public nuisance.

If the water from the porch roof gathered in the gutters leading to the downspout evenly overflowed onto the ground, and some of such water found its way onto the public sidewalk and froze, there would be no liability under the decisions of this court in *Sherman v. La Crosse* (1923), 181 Wis. 51, 193 N. W. 1004, and *Plasa v. Logan* (1952), 261 Wis. 640, 53 N. W. (2d) 720. The reason for such result is that if such were the fact we would have the same condi-

tion present as though the roof had not been equipped with eaves troughs or gutters.

However, it is common knowledge that in order for gutters or eaves troughs to drain properly they must be pitched toward the downspout and if the downspout does become clogged the water does not overflow evenly along the entire length of the gutter but overflows at the point of lowest elevation. The complaint does not allege the position of the private cement walk leading from the porch to the public walk with relation to the clogged downspout at the northeast corner of the porch but we are of the opinion that the allegations of the complaint are subject to the reasonable inference that there was an artificial channeling of water as a result of the clogged downspout onto such private sidewalk leading to the public walk. This being so, the fact situation is comparable to that which prevailed in *Adlington v. Viroqua* (1914), 155 Wis. 472, 144 N. W. 1130, and *Johnson v. Prange-Geussenhainer Co.* (1942), 240 Wis. 363, 2 N. W. (2d) 723.

Although recovery was permitted to the plaintiff users of the icy sidewalks in both the *Adlington v. Viroqua Case, supra,* and *Johnson v. Prange-Geussenhainer Co. Case, supra,* the question of nuisance was not discussed in the opinions in those cases, the causes of action being based upon negligence.

In the cases of *Leahan v. Cochran* (1901), 178 Mass. 566, 60 N. E. 382, and *Bixby v. Thurber* (1922), 80 N. H. 411, 118 Atl. 99, 29 A. L. R. 175, water was channeled by conductor pipes from buildings onto public sidewalks and froze, and both the Massachusetts and New Hampshire courts held that a nuisance was created thereby. The court in its opinion in *Leahan v. Cochran* stated (178 Mass. 570, 60 N. E. 383):

"The conductor in its natural and intended use caused ice to form upon the sidewalk, which, being dangerous to public travel, was a public nuisance."

25 Am. Jur., Highways, p. 805, sec. 523, states:

"It may be laid down as a general rule that one who so constructs or maintains a structure upon his premises as to cause an artificial discharge or accumulation of water upon a public way, which, by its freezing, makes the use of the way dangerous, will be held liable to one who, being rightfully upon the way and exercising due care, is injured in consequence of such dangerous condition. . . . Ordinarily, a prior request to correct the condition or to abate *the nuisance* is not a condition precedent to liability, . . ." (Emphasis supplied.)

Obstructions negligently or intentionally placed on public sidewalks or streets are uniformly held to constitute public nuisances. It is difficult to perceive any distinction which would cause an obstruction on a sidewalk to be regarded as a nuisance while an artificial accumulation of ice on such sidewalk rendering it equally dangerous to travel thereon would not be so regarded. *7* McQuillin, Mun. Corp. (3d ed.), p. 581, sec. 24.574, in discussing obstructions in public streets as nuisances states:

"In this connection, it has been stated that the essential characteristic of a nuisance is that it imperils travel. But undoubtedly any continuing thing or use within a street that renders its use in the ordinary way hazardous, which increases the danger of injury to persons or property, which renders passage through the street more difficult or which necessarily incommodes or impedes the lawful public use of a street is a public nuisance."

The complaint alleges that the defendant by its servants, agents, and employees *"allowed and permitted"* the rectory to be equipped with defective gutters and with a defective downspout, which downspout was either clogged or in an otherwise defective condition so that it did not permit the water to drain down the same; and that the defendant by its servants, agents, or employees *"knew or should have*

*known"* that the water flowing over the public sidewalk as a result of the failure of the downspout to operate properly would result in a hazardous condition for pedestrians and users of the sidewalk. We interpret these allegations to mean that the situation of the water being channeled onto the public sidewalk as a result of the defective or clogged condition of the downspout existed long enough so that defendant knew, or should have known, of such condition a sufficient length of time prior to the accident to have remedied it. Unless such condition did so exist for such length of time there would be no liability.

While the complaint is not a good model of a pleading alleging a cause of action based upon the creation or maintenance of a nuisance, it is our conclusion that the facts alleged, together with inferences which can be fairly drawn from such facts, spell out a cause of action for the recovery of damages for nuisance, and therefore the trial court properly overruled the demurrer.

*By the Court.*—Order affirmed.

GEHL, J. (*dissenting*). I do not agree that the amended complaint alleges the existence of a nuisance. It is alleged that the water "flowed onto the cement walk and over the cement walk onto the said public sidewalk and across the said public sidewalk, and that the said water subsequently froze prior to the said 13th day of February, 1949 [the date of the alleged injury]."

There can be no nuisance except from a condition maintained over an unreasonable period of time. *State ex rel. Callahan Const. Co. v. Hughes,* 348 Mo. 1209, 159 S. W. (2d) 251. See also 39 Am. Jur., Nuisances, p. 303, sec. 22; 66 C. J. S., Nuisances, p. 736, sec. 6. I do not read out of the allegations of the complaint a charge that the condition of which plaintiff complains existed over an unreasonable or substantial period of time. Lacking that essential allega-

tion the complaint fails to state a cause of action for the maintenance of a nuisance.

Since, as is pointed out in the majority opinion, there can be no recovery except upon the theory of nuisance, I am of the opinion that the demurrer should have been sustained.

I am authorized to state that Mr. Justice FAIRCHILD concurs in this dissent.

* Motion for rehearing denied, with $25 costs, on March 2, 1954.