CORPRON and wife, Appellants, v. SAFER FOODS, INC., and another, Respondents.*

*January 10—February 4, 1964.*

* Motion for rehearing denied, with $25 costs, on March 31, 1964.

480

For the appellants there were briefs by *Phillips, Hoffman & Phillips* of Milwaukee, and oral argument by *N. Paley Phillips.*

For the respondents there was a brief by *Kivett & Kasdorf* of Milwaukee, for Safer Foods, Inc., and by *Jerome T. Safer* of Milwaukee, for Safer Brothers, Inc., attorneys, and *John M. Swietlik* and *James G. Forester* of counsel, both of Milwaukee, and oral argument by *Mr. Swietlik* and *Mr. Safer.*

FAIRCHILD, J. 1. *Safe-place statute.* The circuit court declined to instruct the jury that defendants had obligations under the safe-place statute, since the court was of the opinion that the public sidewalk was not a place of employment as defined in sec. 101.01 (1), Stats.

Plaintiffs claim that the sidewalk was a place of employment for which defendants were responsible because "they used the public sidewalk for the purpose of having their customers enter from their parking lot to their store." The case of *Miller v. Welworth Theatres* [1] is directly in point. In that case patrons of the theater were required to stand on the public sidewalk while purchasing tickets at a window, and to walk on the sidewalk from the ticket window to the entrance. Plaintiff purchased a ticket and started toward the entrance, and was injured as a result of a defect in the sidewalk. This court held the public sidewalk was not a place of employment, and the theater owner had no statutory obligation to maintain it in safe condition. We followed this decision in the recent case of *Hansen v. Schmidman Properties.* [2]

Plaintiffs rely on *Schwenn v. Loraine Hotel Co.* [3] where a driveway within the boundaries of the public street was held to be a place of employment. We pointed out in *Hansen, supra,* that in *Schwenn v. Loraine Hotel Co., supra,* "the defendant hotel company and the defendant cab company, for a great many years, exercised complete and exclusive dominion over the area in question," although such area was owned by the city. Further, in *Schwenn, supra,* employees of defendants were on duty in the area frequently and regularly.

The ruling of the circuit court in this case, that the safe-place statute was inapplicable to the public sidewalk, was correct.

---

[1] (1956), 272 Wis. 355, 75 N. W. (2d) 286.
[2] (1962), 16 Wis. (2d) 639, 642, 115 N. W. (2d) 495.
[3] (1961), 14 Wis. (2d) 601, 111 N. W. (2d) 495.

2. *Error in admission of evidence.* Plaintiffs' original attorney of record, Mr. Hillis, having disassociated himself during the course of the trial, testified as to an observation he made of the canopy long after the event. During the summer of 1959 he went to the premises with the Corprons. He saw four or five cracks in the underside of the canopy near the east end. The cracks ran north and south the width of the canopy and were all within seven to eight feet of the east end of the canopy. Water stains spread out from these cracks for about 10 or 12 inches. Apparently the under surface of the canopy was made of plaster. Defendants objected to the testimony, but it was received.

In considering motions after verdict, the court concluded that the testimony was immaterial. The court concluded that the other testimony in the record would not support a verdict that defendants were negligent.

Mr. Hillis' testimony indicated that at some time before his observation water had leaked through the canopy. It would be a reasonable inference that it would have required some appreciable lapse of time for the stains he described to have been created. But we think it would be speculation to infer that the leaking must have been in process five months or more before Mr. Hillis saw the cracks and stains.

This court has said:

"It must be conceded that, while evidence of the character of that in question might not establish a condition which would raise a legal presumption running backward, if the condition were not too remote it would not be entirely without evidentiary consequence. Such consequence might be considerable under some circumstances. For instance, in case of proof of entire want of assets to meet liabilities a few days after the particular time vital to a controversy. It would, necessarily, diminish in weight, according to remoteness, and eventually become so shadowy as to pass into the realms of conjecture, and so outside the field of competency, thereby becoming wholly irrelevant. Within a considerable field, the primary question, as to admissibility, would be one

of competency, in which field, as in all others where the trial court is required to determine matters of fact, there is a broad range for the exercise of judgment, in which the trial court is quite supreme, so much so, that its rulings should not be disturbed unless clearly wrong." [4]

The rule has been summarized in a digest as follows:

"Generally speaking, however, the question whether evidence of the condition of a thing or place before and after an event is relevant and admissible to prove its condition at the time of the event is, to a large extent, dependent upon the character of the thing or place and the nature of the condition sought to be proved, as constant or variable, and upon the existence of any change during the intervening period, and, to some extent, upon the length of that period. The broad general rule is that where there is no change in the condition of an appliance or the premises or the scene of an accident, evidence as to the condition of such appliance or place, either before or after the event in issue, is relevant and admissible to show its condition at the time of such event, provided it relates directly to the issue in question and is not too remote in point of time. But the evidence must relate closely enough to the time of the accident to make it apparent that the condition has not been changed or it must appear that the situation is one which is so constant or permanent that lapse of time will not make a material difference." [5]

We agree that it was error to admit the Hillis testimony.

3. *Whether the record could support a finding of negligence.* It is sufficiently established that the ice was formed by water which dripped from the canopy. Mr. Corpron testified: "It was dripping off the canopy and walking—and running down on the side of the building too." Mrs. Corpron testified: "Well, it was dripping from the top of the canopy."

Presumably there was a substantial amount of snow on top of the canopy which was melting during the day, January 27th. During the week before the accident, 18.2 inches of snow had fallen, and the weather bureau recorded 16

[4] *Ellis v. State* (1909), 138 Wis. 513, 525, 119 N. W. 1110.
[5] 20 Am. Jur., Evidence, p. 284, sec. 306.

inches of snow on the ground at 6 a. m., January 27th. There had been no sunshine during the three previous days, and the highest temperature was 26 degrees. On January 27th, although the temperature ranged from one degree below zero to 19 above, there was sunshine all day. An architect testified that the direct rays of the sun would melt the snow, although the temperature was 19 or below.

A property owner owes no duty to pedestrians to keep the public sidewalk bordering his property clear of ice and snow coming thereon from natural causes or to scatter abrasive material thereon.[6]

Where water is accumulated on private property and intentionally or negligently discharged on the sidewalk, the property owner is liable for injury caused by ice resulting from the freezing of such water.[7] But it has been held that where water is artificially collected and discharged upon the ground at a very considerable distance from the sidewalk and reached the sidewalk by natural flow from that point, the owner was not liable for injury caused by ice which formed on the sidewalk.[8]

The difficulty lies in distinguishing between natural or ordinary drainage of water onto a sidewalk from private land or structures and drainage which will be deemed an artificial accumulation and an intentional or negligent discharge thereof onto the sidewalk. It appears to be the rule that where land is graded or structures are built in the usual and ordinary way, and not for the purpose of accumulating and discharging water on the public sidewalk, drainage which results only incidentally and is not caused by negligent maintenance, is deemed natural or ordinary.[9]

[6] *Walley v. Patake* (1956), 271 Wis. 530, 534, 74 N. W. (2d) 130.

[7] *Adlington v. Viroqua* (1914), 155 Wis. 472, 144 N. W. 1130.

[8] *Plasa v. Logan* (1952), 261 Wis. 640, 53 N. W. (2d) 720. See also *Sherman v. La Crosse* (1923), 181 Wis. 51, 193 N. W. 1004.

[9] See *Sherman v. La Crosse, supra,* footnote 8; *Kunz v. Wauwatosa* (1959), 6 Wis. (2d) 652, 95 N. W. (2d) 760.

There is no contention that the canopy was constructed for the purpose of accumulating and discharging water onto the sidewalk. There was no proof that it was not built in the usual and ordinary manner for such structures. It was provided with a drain. There was no proof of defective maintenance of the canopy or drain. The presence of the large quantity of snow, and its effect in impeding the passage of water toward the drain, give the most-plausible explanation for the fact that water dripped over the edge of the canopy. Under these circumstances, defective maintenance is not to be inferred from the mere fact that the water dripped.

Reference is made in plaintiffs' brief to an ordinance governing the structure of canopies in certain respects. The ordinance was not referred to in the record before the circuit court, and plaintiffs point out no testimony that this canopy did not meet the requirements.

We conclude that the circuit court was correct in changing the answers to the negligence questions.

4. *Request for new trial.* Plaintiffs assert that they relied on the testimony of Mr. Hillis, which was before the jury when they rested their case. They claim that now that it has been disregarded, there should be a new trial so that they could produce evidence showing a defective condition of the canopy.

We do not agree. The action was commenced October 25, 1960. Trial began March 20, 1963. Mr. Hillis was the last witness, on the second day of trial, and did not withdraw as counsel until then. The question as to the materiality of his testimony was obvious. Under these circumstances it seems probable that evidence of a defective condition at the time of the accident was not available and a new trial would be fruitless.

*By the Court.*—Judgment affirmed.