James V. HOLSCHBACH, Plaintiff-Appellant,†

v.

WASHINGTON PARK MANOR and American Family
Mutual Insurance Company,
Defendants-Respondents.

Court of Appeals

*No. 04–1307. Submitted on briefs January 20, 2005.—Decided
February 23, 2005.*

2005 WI App 55

(Also reported in 694 N.W.2d 492.)

† Petition to review denied 5-11-2005.

264

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jordan P. Blad* of *Alpert & Fellows, LLP*, of Manitowoc.

On behalf of the defendants-respondents, the cause was submitted on the brief of *William R. Wick* and *Kristy A. Christensen* of *Nash, Spindler, Grimstad & McCracken LLP* of Manitowoc.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. BROWN, J. This case involves an issue that has arisen numerous times in Wisconsin case law, namely, whether an injured plaintiff who has slipped and fallen on an icy public sidewalk may sue the owner of the property abutting the walk for not alleviating that condition. The law is that when a properly working downspout built in the ordinary and usual manner discharges water upon the property and such water finds its way to the public sidewalk because of the natural slope and topography of the land, the resulting runoff onto the sidewalk is a natural condition for which the property owner incurs no liability. Such are the facts of this case; we therefore affirm.

¶ 2. This case comes before us on summary judgment. We review summary judgments de novo, employing the same well-known methodology the circuit court employs. *Gruber v. Village of N. Fond du Lac*, 2003 WI App 217, ¶ 4, 267 Wis. 2d 368, 671 N.W.2d 692. We will affirm such a judgment only when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* We have drawn all reasonable inferences in the appellant's favor in the recitation of facts that follows. *See Morris v. Juneau County*, 219 Wis. 2d 543, 550, 579 N.W.2d 690 (1998) (court should draw inferences in the light most favorable to the nonmoving party).

¶ 3. On the evening of December 30, 1999, James V. Holschbach slipped and fell on a snow-covered, public sidewalk as he walked south on South 12th Street in Manitowoc, Wisconsin. The dusting of snow on the sidewalk obscured the large patch of ice that caused Holschbach to lose his balance. As Holschbach unsuccessfully attempted to regain his footing, his ankle

popped, causing him severe pain. The fall seriously injured him.

¶ 4. The accident occurred on the part of the sidewalk abutting 1020 South 12th Street, where defendant Washington Park Manor owned and operated an apartment complex. The patch of ice where Holschbach slipped lay on the sidewalk at the northeast corner of the property.

¶ 5. The icy patch formed as a result of runoff from Washington Park Manor's property. The northeast corner of the apartment complex had a downspout running from the roof of the building to the ground below. This downspout lay roughly twenty-five feet from the sidewalk, directing drainage away from the building. Water would run from that area down to the sidewalk because of the grade of the land. The elevation of the area where the downspout discharged lay about two feet above sidewalk level, causing a slope. A retaining wall on the north end of the property might also have contributed to the flow of water. Water would flow from the building, down the slope to the wall, and then down the wall to the sidewalk.

¶ 6. According to the neighbor who eventually discovered Holschbach lying on the sidewalk, icy conditions resulting from the described runoff presented an ongoing problem. In spite of his complaints about the drainage problem, however, Washington Park Manor never corrected the problem. The problem might have been alleviated had Washington Park Manor connected its downspout to the city's storm sewer system, as a local ordinance arguably required. Such a connection had been available to the property since at least 1986.

¶ 7. On December 3, 2002, Holschbach commenced a lawsuit against Washington Park Manor. The complaint alleged a negligence cause of action based on

the unsafe condition of the sidewalk. It also named American Family Mutual Insurance Company, Washington Park Manor's insurer, as a defendant.

¶ 8. Both defendants moved for summary judgment on November 7, 2003, and the court rendered its oral decision in their favor on February 26, 2004. According to the circuit court, the case law indicated that the flow of water from the property was by itself insufficient to create liability for slips and falls on a public sidewalk. It asserted that the courts have only imposed liability on property owners in two types of cases: (1) those in which the property owner designed some feature on the property to act as a drainage system and the design led to the accumulation of ice on the sidewalk and (2) those in which a drainage system had a defect that caused the accumulation. It differentiated the situation at hand, observing that in this case, water left the property and ran onto the sidewalk only incidentally.

¶ 9. The circuit court further concluded that even if the city ordinance applied to Washington Park Manor, the result would not change. The court distinguished between the validity of an ordinance and the shifting of tort liability pursuant to an ordinance. According to the circuit court, cities bear the primary responsibility for sidewalk slips and falls. The court stated,

> I don't believe that it's the law in Wisconsin, that violation of such an ordinance results not only in making the property owner responsible for an ordinance violation should the city decide to prosecute, but also create[s] a civil liability for a slip and fall where there was no such liability before.

Accordingly, the court granted the defendants' motion for summary judgment.

269

¶ 10. We begin by repeating the following well-established rule: when ice or snow has accumulated on a public sidewalk abutting private property, the property owner owes no duty to passers-by either to clear the sidewalk or to scatter abrasive material thereon. *Corpron v. Safer Foods, Inc.*, 22 Wis. 2d 478, 484, 126 N.W.2d 14 (1964). A defendant may, however, incur liability for artificial accumulations. *See id.* at 484; *Gruber*, 267 Wis. 2d 368, ¶ 2. Thus, whether Holschbach has any chance of winning his suit depends upon whether the runoff causing the ice puddle upon which he slipped was a natural or an artificial condition. We determine independently which of the two categories applies, because the issue presents a question of law. *Id.*, ¶ 3.

¶ 11. As we stated in *Gruber*, whenever land grading and structures on the property are built in a usual and ordinary way and not for the purpose of accumulating and discharging runoff on a public sidewalk, the courts will deem the incidental drainage that results natural. *Id.*, ¶ 2; *see also Corpron*, 22 Wis. 2d at 484. On the other hand, when a property owner by negligent omission allows water to accumulate where one would only expect to find a normal amount thereof—for example by failing to properly repair a drainage system—then an artificial condition exists. *Gruber*, 267 Wis. 2d 368, ¶ 2; *see also Sambs v. City of Brookfield*, 66 Wis. 2d 296, 306, 224 N.W.2d 582 (1975). *Gruber* recognized that the presence of a design system is crucial to a slip-and-fall plaintiff's case: something made with human labor must be defective, and the runoff must result from that defect. *Gruber*, 267 Wis. 2d 368, ¶ 18.

¶ 12.  We agree with the trial court that the accumulation of ice in front of 1020 South 12th Street resulted from natural runoff. Certainly, the downspout's purpose involved directing water away from the apartment complex. Nothing in the record, however, reflects that the downspout was installed in other than the ordinary and usual way or that it was designed for the purpose of depositing water onto the sidewalk. Moreover, we have no facts before us to indicate that the two-foot elevation difference between the front of the building and the sidewalk was anything other than naturally occurring topography. We simply cannot assume that the combination of downspout and topography constitute a "design system."

¶ 13.  The facts of *Gruber* are instructive. In *Gruber*, although water normally ran down an alleyway and across a sidewalk to the street during heavy flows, some of the runoff would flow down the sidewalk, resulting in ice accumulations when the pooled water froze. *Id.*, ¶¶ 7, 9. The plaintiff in *Gruber* sustained her injuries when she fell on such an accumulation. *Id.*, ¶¶ 5–7. The court held that even if the flow resulted from the varying pitches and elevations of the village's streets, it could not deem that flow artificial without the essential allegation that the village paved the streets in this arrangement "*as part of a drainage system design plan.*" *Id.*, ¶ 23 (emphasis added). We quoted the following observation by the trial court:

> And when I look at the facts of the Gruber case, our case, well, there really was nothing to tinker with or repair. It's just that's the way it was. There were no downspouts to be maintained. There were no culverts to clean or drainageways to keep open. It was just the way it was.

271

*Id.*, ¶ 11.

¶ 14. Similarly, in this case, "there really was nothing to tinker with or repair." *See id.* First, although the downspout was not a naturally occurring structure, nothing in the facts suggests that it was in a state of disrepair or anything other than in perfect working condition; thus, it did not require any tinkering or repairs that would have alleviated the danger of ice accumulation on the sidewalk. *See Smith v. Congregation of St. Rose*, 265 Wis. 393, 401, 61 N.W.2d 896 (1953) (holding trial court properly overruled a demurrer where allegations in complaint stated accumulation of water resulted from a defective or clogged downspout), *overruled on other grounds by Widell v. Holy Trinity Catholic Church*, 110 Wis. 2d 648, 121 N.W.2d 249 (1963). Moreover, we note again that the record does not lead us to conclude the downspout was built other than in the ordinary and usual way as an ordinary and usual addition to a building. Second, we cannot discern from the facts anything Washington Park Manor needed to "fix" about the slope of the land. The downspout and topography of the property were "just the way [the property] was." *See Gruber*, 267 Wis. 2d 368, ¶ 11.

¶ 15. Our holding is also consistent with our supreme court's holding in *Plasa v. Logan*, 261 Wis. 640, 53 N.W.2d 720 (1952). In *Plasa*, a drain spout collected water from the roof of the defendants' hospital building and discharged it onto the ground at the rear and southwest side of the premises adjoining the building. *Id.* at 641, 645. The water flowed from the point of discharge to the hospital's driveway located along the building's south side and then ran eastward down that driveway to the public sidewalk to the east of the building. *Id.* at 641, 644–45. The supreme court held that the ice puddle on the sidewalk resulted only

incidentally from natural flow down the driveway. *See id.* at 645, 647. The court did *not* conclude that the property's topography in combination with a drain spout on the side of the building resulted in an artificial "design system."

¶ 16. Holschbach attempts to distinguish *Plasa* from this case. In that case, he observes, the point of discharge was on a different side of the building from the public sidewalk, and the water had to make its way over some distance to reach the sidewalk. He points out that the court "went so far as to state that the discharge of the roof water to the rear of the property showed a clear intent *not* to divert the same to the front across the public walk." He appears to read *Plasa* to say that the flow of water from point of discharge to the public sidewalk is natural runoff only when the discharge point lies far away from the public sidewalk and where the landowner does not intend the runoff to reach the sidewalk.

¶ 17. We reject that characterization of *Plasa*. *Plasa* stands for the proposition that when a properly working downspout constructed in the ordinary and usual way discharges water onto land and such water flows to the sidewalk merely by virtue of the natural and ordinary layout of the land, no design system exists. We do not read the court's observation about where the defendants intended the water to end up to mean that this intent directly determined the designation of water flow as natural or artificial. At most, that intent might bear on whether the landowner intended the combination of a downspout and natural topography to operate as a "design system." Where the landowner places a downspout in a common and expected location on the property—as was the case both here and in *Plasa*—there simply is not enough evidence to con-

273

clude that the landowner intended to create such a "design system." Moreover, we see no logical reason why the distinction between natural and artificial water flow should turn on how many feet the point of discharge lies from the point of accumulation.

¶ 18. Holschbach further urges that *Adlington v. City of Viroqua,* 155 Wis. 472, 144 N.W. 1130 (1914), governs this case. In *Adlington,* the supreme court affirmed the property owners' liability to the slip-and-fall plaintiff. *Id.* at 473–74, 480. The defendants discharged water onto a private alleyway on their property via a conveyer pipe. *Id.* at 473. The runoff reached the nearby sidewalk because a culvert designed to catch the excess drainage had become clogged. *Id.* at 473, 477–78.

¶ 19. We disagree that this case resembles *Adlington*. That case falls squarely within the rule we clarified in *Gruber*. An object made with human labor (the culvert) contained a defect (the obstruction), and this defect resulted in the accumulation of ice on the nearby sidewalk. Here, by contrast, no human-made object had any defect that resulted in the drainage. Rather, an artificial object with no alleged defect whatsoever deposited water upon the ground; from there the natural topography drained the excess onto the sidewalk.

¶ 20. We next turn to Holschbach's argument that Washington Park Manor's failure to hook up the downspout to the storm sewer violated a local ordinance requiring them to connect. Holschbach concedes that the ordinance did not attempt to shift the responsibility for maintaining the public sidewalk from the city to private landowners whose properties abutted the sidewalk. He appears to recognize that such liability shifting is contrary to law. *See Kobelinski v. Milwaukee & Suburban Transp. Corp.,* 56 Wis. 2d 504, 513, 202 N.W.2d 415 (1972) ("Since the city cannot delegate its

primary responsibility to maintain its sidewalks, it follows it cannot delegate or limit its primary liability by ordinance."). His theory of liability is that the storm sewer ordinance "simply codified the common law responsibility for artificial conditions and set the standard of care for such property." Holschbach's argument clearly relies on the proposition that the ice accumulation that injured him qualified as an artificial condition.

¶ 21. We reject that argument. We have already concluded that the ice patch formed as a result of a natural runoff. Admittedly, hooking up to the local storm sewer might have alleviated any dangerous condition on the abutting sidewalk. But the fact is that any perceived negligence by Washington Park Manor in failing to hook up to the storm sewer does not magically turn the naturally formed ice puddle into an accumulation formed by artificial means. If the supreme court or our legislature wants to fashion a rule or statute making landowners liable for slip-and-fall injuries because of a failure to hook up to a working storm sewer, this court will follow that law. But as the law stands now, the landowner has no such exposure, and this court has no power to create that exposure. *See Cook v. Cook*, 208 Wis. 2d 166, 188–89, 560 N.W.2d 246 (1997) (Unlike the supreme court, we are primarily an error-correcting court.).

¶ 22. The icy condition of the sidewalk in front of Washington Park Manor resulted from a natural accumulation of water. For that reason, we do not hold the defendants liable for that condition. This result does not change merely because a city ordinance may have required Washington Park Manor to hook up its down-

spout to the city storm sewer system. We therefore affirm the circuit court's summary judgment for the defendants.

*By the Court.*—Judgment affirmed.